UNITED STATES of America,
Plaintiff–Appellee,

v.

Dwight REED, Defendant–Appellant.

No. 94–5164.

United States Court of Appeals,
Tenth Circuit.

July 31, 1995.

Submitted on the briefs: *

Stephen J. Knorr, Federal Public Defender, and Stephen J. Greubel, Asst. Federal Public Defender, Tulsa, OK, for appellant Dwight Reed.

Stephen C. Lewis, U.S. Atty., (Thomas Scott Woodward, Asst. U.S. Atty., with him on the brief), Tulsa, OK, for plaintiff-appellee.

* After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. This case is therefore ordered submitted without oral argument.

** The Honorable Wesley E. Brown, United States Senior District Judge for the District of Kansas, sitting by designation.

Before ANDERSON and BALDOCK, Circuit Judges, and BROWN, Senior District Judge.**

WESLEY E. BROWN, Senior District Judge.

The appellant Dwight Reed was convicted of possessing a firearm after a former conviction of a felony in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2). He appeals that conviction, presenting the sole issue of whether the trial court erred by giving the jury an *Allen* charge after the jury announced it was unable to reach a verdict.

After reviewing the pleadings, trial transcript, and briefs, we conclude that the *Allen* instruction was appropriate under the circumstances of Mr. Reed's trial and affirm the judgment.

There is no dispute concerning the facts surrounding appellant's arrest and prosecution, and the case was presented to the jury upon the testimony of only three witnesses— two for the prosecution and one for the defense. The entire case took less than two hours to complete.[1]

Officer Lori Visser of the Tulsa Police Department testified that she was called to the scene of a domestic dispute at 10:00 p.m., July 2, 1993. When she and another officer Howard Goad arrived at the scene, the front yard of a private home, they found three males and one female. The three men were arguing over the woman and one, a Mr. Crawford, was wielding a baseball bat. Appellant and the other man were entering Mr. Reed's vehicle which was parked in the driveway of the residence at the time the officers arrived. Crawford told them that appellant had a gun, and appellant gave his consent for search of his vehicle. The firearm, a Smith & Wesson 9 millimeter semi-automatic pistol, and several rounds of ammunition were

1. The parties stipulated that appellant was convicted of a felony in May, 1992, that the firearm in question was manufactured outside the State of Oklahoma, and that the vehicle in which the weapon was found was registered to the defendant, Dwight Reed.

found beneath the driver's seat of appellant's vehicle.

Officer Howard Goad testified then when he arrived at the scene he saw two males coming from the house "in kind of a fast paced run" to a Jeep Cherokee that was parked in the driveway and that he pulled his vehicle up behind the Jeep to keep them from leaving the area. The man with the baseball bat in his hand told Goad that appellant had threatened him with a gun and, after the firearm was discovered, appellant was arrested. Goad further testified that after reading of *Miranda* rights, appellant told him that "he needed to carry a gun because people were shooting at him all the time." (Vol III Record, Transcript p. 23).

After Visser and Goad testified, Felecia Davis (the lady at the center of the controversy) was called as a witness for the defense. She testified that she had been out with appellant Reed that evening and that her boyfriend Rick Crawford became angry because she had another friend. Ms. Davis testified that Reed never told her that he had a weapon, that she did not tell Officer Visser that he had a weapon, and that she did not see the firearm in question until it was discovered in Reed's vehicle.[2]

After the testimony of the three witnesses was presented, jury instructions were read without objection from either side; and the jury retired at 2:10 p.m. Two hours later, the jury returned with a note which read: "We are unable to reach a unanimous decision. No one has changed their position

2. The direct and cross examination of Ms. Davis covers less than four pages of the transcript.

3. In dismissing the jury for the evening, the court told them:
   "You all received this case for deliberation just about two hours ago, and I'm not really interested in how the jury stands numerically, but I really think there is perhaps some wisdom in this matter to let you go on about your business at this time and then ask you to be back here at 9 o'clock in the morning to recommence your deliberations, and perhaps overnight that may be of some help to you, and then start back in the morning at 9:00 and see what results from that. I think that might be helpful. So that's what we'll do."

4. At this time the court advised counsel in this manner:

since 2 p.m. What happens if we stay this way?" The court discussed with counsel the possibility of using an *Allen* instruction but elected to dismiss the jury for the evening with a direction that they return in the morning for further deliberations.[3]

The jury reconvened at 9:00 a.m. the next day, and the court held an in-chambers conference with counsel concerning his intention to give an *Allen* instruction and to declare a mistrial if the jury did not return with a verdict by noon.[4] During this conference, the jury presented another note requesting a definition of "possession." The court advised the jury that it already had been given and directed the jurors to continue their work. The jury was then dismissed at 9:20 a.m. to continue deliberations.

Around 10:35 a.m., after receiving another note from the jury stating that "We are unable to reach a verdict," the court advised counsel that he would give the *Allen* instruction as approved by the Supreme Court in *Allen v. United States*, 164 U.S. 492, 498–502, 17 S.Ct. 154, 156–157, 41 L.Ed. 528, 530–531 (1896), and allow further deliberations until noon when he would grant defendant's motion for a mistrial if there was no verdict. The jury was again returned to the jury room at 11:00 a.m. At noon, the court received a note that the jury had reached a verdict.

The *Allen* instruction which was given over the objection of defense counsel has been approved by this circuit in *U.S. v. McKinney*,

"It's my intent to call this jury in and give them this supplemental, so-called Allen charge instruction that has been approved by the Tenth Circuit ... and although I'm not going to tell the jury this, it's my intent, and after I give them this instruction, to let them work until noon, and if they've worked the case out by noon and arrived at a unanimous verdict, fine; if they haven't by noon, I have no intention of feeding them. At noon, if they haven't arrived at a verdict, I'll just declare a mistrial and let them go on about their business. That will be about five hours of deliberation in this case. If they're locked up for five hours we'll just have to try it again. Unless one of you lawyers is just real eager for them to continue their deliberations after noon, that's kind of my plan of attack here." (Vol. III Record, Transcript, pp 59–60).

822 F.2d 946 (10th Cir.1987).[5] In this appeal defendant claims that it was error for the trial court to give this instruction after the jury had twice announced it could not reach a verdict since the instruction, given separate prominence from other instructions, "introduced a coercive atmosphere into the deliberations."

Under this circuit's standard of review, we have examined the circumstances under which the instruction was given and find there was no abuse of discretion in its use in this case. After the first note from the jury, the court dismissed them for the day with instructions to return for further deliberations. The *Allen* charge eventually given was evenhanded; it did not presume that the majority favored a guilty verdict; and it emphasized that no juror was expected to yield a conscientious conviction on the evidence. See *U.S. v. Butler*, 904 F.2d 1482 (10th Cir. 1990), where a similar instruction was given after nine hours of deliberation and was found not to be coercive in nature.

Since the trial court properly exercised its judgment and did not abuse its discretion in giving an *Allen* instruction in this case, the judgment is AFFIRMED.

5. The charge given was as follows:
"Members of the Jury: I am going to ask that you continue your deliberations in an effort to agree upon a verdict and dispose of this case; and I have a few additional comments I would like for you to consider as you do so.

This is an important case. The trial has been expensive in time, effort and money to both the defense and the prosecution. If you should fail to agree on a verdict the case is left open and may be tried again. Obviously, another trial would only serve to increase the cost to both sides, and there is no reason to believe that the case can be tried again by either side better or more exhaustively than it has been tried before you.

Any further jury must be selected in the same manner and from the same source as you were chosen, and there is no reason to believe that the case could ever be submitted to 12 men and women more conscientious, more impartial, or more competent to decide it, or that more or clearer evidence could be produced.

If a substantial majority of your number are for a conviction, each dissenting juror ought to consider whether a doubt in his or her own mind is a reasonable one since it appears to make no effective impression upon the minds of the others. On the other hand, if a majority or even a lesser number of you are for acquittal, the other jurors ought seriously to ask themselves again, and most thoughtfully, whether they do not have a reason to doubt the correctness of a judgment which is not shared by several of their fellow jurors, and whether they should distrust the weight and sufficiency of evidence which fails to convince several of their fellow jurors beyond a reasonable doubt.

Remember at all times that no juror is expected to yield a conscientious conviction he or she may have as to the weight or effect of the evidence. But remember also that, after full deliberation and consideration of the evidence in the case, it is your duty to agree upon a verdict if you can do so without surrendering your conscientious conviction. You must also remember that if the evidence in the case fails to establish guilt beyond a reasonable doubt the accused should have your unanimous verdict of Not Guilty."