F I L E D
United States Court of Appeals
Tenth Circuit

MAR 25 2004

PATRICK FISHER
Clerk

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

MALEEK LASHAWN HUGHES,

    Defendant-Appellant.

No. 03-3075
(D.C. No. 01-CR-40086-SAC)
(Kansas)

**ORDER AND JUDGMENT**[*]

Before **SEYMOUR**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and **HARTZ**, Circuit Judge.

On August 15, 2001, a grand jury indicted Maleek Lashawn Hughes ("the defendant") of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g) and 924(a)(2). On September 17, 2002, the government, pursuant to 18 U.S.C. § 924(e), filed an information advising the court and the defendant that, if the defendant was convicted of the crime charged, it would ask that the defendant be sentenced to at least 180 months imprisonment based on his three prior convictions for crimes referred to

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3

in 18 U.S.C. § 924 (e)(1) as being a "violent felony or a serious drug offense." On September 20, 2002, the defendant was convicted of the crime as charged in the indictment. On February 25, 2003, the district court sentenced defendant to imprisonment for 188 months. Defendant appeals his conviction and the sentence imposed. We affirm.

On appeal, defendant does not argue that the evidence is insufficient to support his conviction. Hence, we will only discuss the background facts as is necessary to understand the five grounds of error which the defendant does assert in this appeal.

<u>ALLEN INSTRUCTION</u>

The jury commenced its deliberations on September 19, 2002, at 3 o'clock p.m. Later, that same day, the jury sent a question to the court. That question did not relate to any possible inability of the jury to reach a unanimous decision in the matter. After a conference regarding the question, the district court answered the question at 4:20 p.m. the same day, without objection. The following day, September 20, 2002, the jury sent a second question to the court, which also did not concern the possibility of a "hung jury." A conference regarding that particular question was held at 9:05 a.m. on September 20th. However, before the court could respond to the second question, the jury at 10:30 a.m. sent another communication to the court stating that "[a]fter full deliberation and consideration of all the evidence, the impaneled jury cannot reach a unanimous verdict." At this juncture, the district court answered the jury's second question, again without any objection from counsel, and the jury resumed deliberations. In so doing, the district court

did not mention the possibility of a deadlocked jury. However, outside the presence of the jury, the court at that time did discuss with counsel the instruction it proposed to give the jury should it persist in its belief that a unanimous decision could not be reached. Defense counsel objected to the instruction which the court indicated it might give the jury, suggesting, as an alternative, that the court simply reread all of the instructions previously given the jury. At 11:17 a.m. the same date, the jury sent the court the same message it had previously sent the court about their inability to arrive at a unanimous verdict. The court then conferred with counsel and indicated that it would give the jury the instruction which they had previously discussed. At this juncture, defense counsel again objected to the proposed instruction, claiming that "the fourth paragraph . . . talks about if the substantial majority . . . are for conviction . . . that continues on in that way because I don't believe that's an appropriate statement of the law." [sic] The objection was overruled. At about 11:45 a.m. the court read an *Allen* instruction to the jury, and immediately thereafter the jury requested, and received, a written copy of the instruction which the court had just given them orally. We cannot tell from the record before us whether the jury thereafter recessed for lunch. In any event, at 1:40 p.m. the jury returned a verdict of guilty as charged.

Defendant's first argument is that the district court committed reversible error when it gave the jury the so-called *Allen* instruction because the instruction given "admonished the jurors in the minority to reconsider their views without also

admonishing the jurors in the majority to reconsider their views." That is not our reading of the instruction. In this particular connection, the *Allen* instruction given this jury included the following language:

> If a substantial majority of your number are for a conviction, each dissenting juror ought to consider whether a doubt in his or her mind is a reasonable one since it appears to make no effective impression upon the minds of others. On the other hand, if a majority or even a lesser number of you are for acquittal, the other jurors ought seriously to ask themselves again, and most thoughtfully, whether they do not have a reason to doubt the correctness of a judgment which is not shared by several of their fellow jurors, and whether they should distrust the weight and sufficiency of evidence which fails to convince several of their fellow jurors beyond a reasonable doubt.
>
> Remember at all times that no juror is expected to yield a conscientious conviction he or she may have as to the weight or effect of the evidence. But remember also that, after full deliberation and consideration of the evidence in the case, it is your duty to agree upon a verdict if you can do so without surrendering your conscientious conviction. You must also remember that if the evidence in the case fails to establish guilt beyond a reasonable doubt the accused should have your unanimous verdict of Not Guilty.

It is correct, as pointed out by counsel, that the above quoted language instructs the jury that, if a majority of jurors are for a conviction, then the jurors who are for acquittal should reconsider their position. However, in the very next breath, so to speak, the same instruction states the converse of the preceding sentence, i.e., that, "[o]n the other hand, if a majority, or even a lesser number of you are for acquittal, the other jurors [i.e., those voting for conviction] ought to seriously ask themselves again and most thoughtfully

- 4 -

whether they do not have a reason to doubt the correctness of a judgment which is not shared by several of their fellow jurors, and whether they should distrust the weight and sufficiency of evidence which fails to convince several of their fellow jurors beyond a reasonable doubt." The instruction also stated that "no juror is expected to yield a conscientious conviction he or she may have as to the weight or effect of the evidence." The instruction given is, in our view, "neutral" and instructed the jury, in so many words, that each of the 12 jurors should reconsider his or her position. *See United States v. McKinney,* 822 F.2d 946, 949 (10th Cir. 1987); *United States v. Dyba*, 554 F.2d 417, 421 (10th Cir. 1977).

Counsel also attacks the *Allen* instruction "because it failed to remind the jurors that the government has the burden of proof." The jury had previously been instructed of that fact, and had further been advised that the jurors should consider all of the instructions given them. Putting in the *Allen* instruction that the government has the burden of proof is less important where all of the jurors have been instructed to reexamine his or her prior vote on the matter. *United States v. Winn*, 411 F.2d 415, 417 (10th Cir. 1969). And the fact that the jury returned a verdict very shortly after receiving the written copy of the *Allen* instruction, does not necessarily prove that the instruction was coercive. *United States v. Arney*, 248 F.3d 984, 990 (10th Cir. 2001) ("We have approved *Allen* instructions in previous cases where the juries also deliberated for short periods of time.") (citations omitted).

In *United States v. McElhiney,* 275 F.3d 928, 940 (10th Cir. 2001), in connection with an *Allen* instruction we spoke as follows:

> With respect to the coerciveness of the charge actually given, this circuit has adopted a case-by-case approach, *see Flannery,* 451 F.2d at 883, considering such factors as "(1) [t]he language of the instruction, (2) its incorporation with other instructions; and (3) the timing of the instruction."

In *United States v. Winn,* 411 F.2d 415 (10th Cir. 1969), we spoke as follows:

> It would, of course, be more palatable if the jury were again reminded of the presumption of innocence and burden of proof, and, more importantly, told they must not give up their conscientiously held views. But there is no ritual of words for common law instructions in federal courts. The question is whether the language used was coercive, not whether the judge used the magic words. Appraising the instruction as a whole, in its context, we think the jury was given to understand that the judge had no intention to force any kind of verdict and if, after a little more deliberation, they were unable to reach a verdict, appropriate action would be taken. We cannot say that the words used were reversibly coercive.

In *United States v. McElhiney,* 275 F.3d at 940, we also said that the "[u]ltimate question, however, is whether the *Allen* instruction was 'impermissibly coercive in a way that undermined the integrity of the deliberation process'." In our view, the *Allen* instruction given in the instant case was not "impermissibly coercive" and did not "undermine the integrity of the deliberation process." Tenth Circuit cases supporting our resolution of this issue are *United States v. Ailsworth*, 138 F.3d 843, 851 (10th Cir. 1998); *United States v. Reed*, 61 F.3d 803, 804-05 (10th Cir. 1995) (approving *Allen* instructions identical to or indistinguishable from the *Allen* instruction given in this case).

## SEQUESTRATION

Prior to trial, the district court entered a sequestration order at the request of defense counsel, which directed all persons who were going to testify to <u>not</u> be in the courtroom until after they had testified. Defense counsel advised his potential witnesses, including one Grace Thurman. Notwithstanding, Ms. Thurman was in the courtroom during at least a part of the proceedings, apparently because a well-meaning security officer of the court had invited her to so do. When defense counsel called Ms. Thurman as a witness, the prosecution objected on the ground that Ms. Thurman had violated the sequestration order. The circumstances surrounding Ms. Thurman's violation of the sequestration order were inquired into, and were as above indicated. The court then inquired of defense counsel what Ms. Thurman's testimony would be if allowed to testify. It developed that Ms. Thurman was the landlord of the premises where defendant had been arrested, and counsel stated that she would testify as to the extent of physical damage inflicted on the premises when the officers were executing a search warrant which culminated in the defendant's arrest. In executing the warrant the officers had forcibly entered the residence via the front door and perhaps had also forcibly entered a bathroom when they heard a toilet flushing. Ms. Thurman was apparently going to testify that the basement ceiling below the toilet was also damaged.

A Ms. Rias, a tenant of Ms. Thurman's at the residence where the defendant was arrested, was defendant's only witness at trial. According to defense counsel, Ms.

Thurman would have testified that the property damage was more extensive than the damage testified to by the officers. The district court refused to allow Ms. Thurman to testify, holding that the sequestration order had been violated, and that Ms. Thurman's testimony would have been only cumulative. Further, and importantly, the testimony of Ms. Thurman would have pertained to a collateral matter, i.e., the extent of the damage done to the premises in the execution of the warrant. The essential elements of the crime charged were that defendant was a felon, which was admitted, and that he owned and possessed the firearm in question. The officers' testimony was that the defendant admitted, at the scene, that the firearm was his. At trial, the defendant elected not to testify and called only one witness, Ms. Rias, who testified that the firearm in question was hers, not the defendant's. In this regard, the officers testified that when Ms. Rias was questioned at the time of defendant's arrest, she did not claim or suggest that the firearm here in question was hers. The extent of the damage to doors, the basement ceiling, and the like, was obviously a collateral matter. It was not an essential element of the crime charged. In *Orjias v. Stevenson,* 31 F.3d 995, 1008 (10th Cir. 1994) we said that a "matter is collateral if it could not have been introduced in evidence for any purpose other than for impeachment." We are not persuaded by the suggestion that Ms. Thurman's testimony would have tended to impeach the officers' testimony. In sum, under the circumstances of this case, the district court did not err in enforcing its sequestration order disallowing Ms. Thurman to testify as a defense witness.

## IMPROPER CLOSING ARGUMENT

As a further ground for reversal, defendant argues that government counsel made improper closing and rebuttal argument to the jury wherein, *inter alia,* he allegedly vouched for the integrity of the government witnesses and denigrated the testimony of Ms. Rias, defendant's only witness, who, incidentally, was defendant's cousin. No contemporaneous objection was made by counsel. Hence, we review the prosecutor's closing argument for plain error. Counsel's argument was "aggressive," making reference, *inter alia,* to the O. J. Simpson trial, and the like. Some of this was arguably provoked by defense counsel's own argument. However, in our view, when read in context, such does not constitute plain error. *See United States v. Broomfield*, 201 F.3d 1270, 1276-77 (10th Cir. 2000) (holding that similar statements made by prosecutor may have "pushed the envelope" but did not warrant a new trial under abuse of discretion review).

## CUMULATIVE ERROR

For the reasons above stated, we do not find any "cumulative error" necessitating a new trial. *See Moore v. Gibson*, 195 F.3d 1152, 1175 (10th Cir. 1999) ("cumulative error applies where there are two or more actual errors.")

## SENTENCING ENHANCEMENT

As earlier stated, prior to trial the government advised the court and the defendant that, if defendant was convicted of the crime charged, it would ask that the court, under 18 U.S.C. §924(e), sentence the defendant to not less than 15 years because of his three prior

convictions for crimes which were either a "violent felony or a serious drug offense." After his conviction by the jury for the crime charged in the one count indictment, the case was referred to the probation department for a pre-sentence investigation. That report showed, *inter alia,* that the defendant, at the age of 19, was convicted in a state court in Illinois of the manufacture and delivery of one to 15 grams of cocaine. The report, citing U.S.S.G. § 4B1.4(a), stated that defendant, because of his prior convictions, one of which was the Illinois conviction, was an "armed career criminal" and that, under U.S.S.G. § 4B1.4(b)(3)(B), the defendant's base offense level was 33. Otherwise, defendant's base offense level would have been 24. The report went on to state that with defendant's adjusted base offense level of 33, when coupled with his criminal history category of IV, his guideline range was 188 to 235 months.

The defendant filed an objection to the foregoing findings and recommendation of the probation department, contending, as we understand it, that defendant was not subject to the "armed career criminal enhancement" because his conviction in the Illinois proceeding was actually only for simple possession of cocaine and was neither a "violent felony" nor a "serious drug offense" as required by 18 U.S.C. §924(e).

The court held two hearings on the question of whether the Illinois conviction was for the manufacture and delivery of cocaine, in which event it would qualify as a "serious drug offense, " or only for simple possession, which apparently would not be a "serious drug offense." At the first hearing the government, through the probation office, provided

the court with copies of the Illinois statute here involved. At the second sentencing hearing, the government presented to the court certified copies of defendant's conviction in Illinois. Together, these documents showed that the defendant was convicted of a violation of an Illinois statute indicating that defendant had been convicted of a Class 1 felony and subject to a term of imprisonment from 4 to 15 years. It was on this general state of the record that the district court determined that the Illinois conviction was a "serious drug offense" and that the defendant, being an "armed career criminal," had a base offense level of 33. The district court then sentenced defendant to imprisonment for 188 months.

Based on the evidence before it, we conclude that the district court did not err in concluding that the defendant in this case was convicted in the Illinois proceeding for the manufacture and delivery of cocaine and hence was correctly determined to be subject to the "armed career criminal" enhancement of his base offense level from 24 to 33.

We review a sentence enhancement under 18 U.S.C. § 924(e) *de novo,* and "examine the entire record and supporting documentation to determine the legitimacy of the trial court's sentence." *U.S. v. Adkins,* 196 F.3d 1112, 1118 (10th Cir. 1999).

Judgment affirmed.

ENTERED FOR THE COURT


Robert H. McWilliams
Senior Circuit Judge