**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 13 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

BERNIE BANUELOS,

    Defendant-Appellant.

No. 03-2088
(District of New Mexico)
(D.C. No. CR-02-84-WJP)

## ORDER AND JUDGMENT[*]

Before **MURPHY**, **HOLLOWAY**, and **McCONNELL**, Circuit Judges.

### I. INTRODUCTION

A jury convicted Bernie Banuelos of (1) distributing heroin, (2) possessing

with intent to distribute a substance containing cocaine base, and (3) conspiring to

possess with intent to distribute a substance containing cocaine base, all in

violation of 21 U.S.C. §§ 841 and 846.  The district court imposed a term of

imprisonment of 240 months on the heroin distribution conviction, imposed a

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

term of imprisonment of 324 months on each of the convictions relating to cocaine base, and ordered that all sentences run concurrently. On appeal, Banuelos asserts the district court erred in the following particulars: (1) giving an *Allen* instruction to the jury; (2) refusing to give the jury an entrapment instruction; (3) enhancing his sentence for possessing a firearm in connection with his drug convictions; (4) enhancing his sentence for acting as an organizer, leader, manager or supervisor; and (5) refusing to depart downward from the otherwise applicable Sentencing Guideline range. As to all claims except Banuelos' downward departure claim, this court exercises jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a) and **affirms**. As to Banuelos' downward departure claim, this court **dismisses** the appeal for lack of appellate jurisdiction.

## II. BACKGROUND

In December of 2001, a confidential informant told law enforcement agents that Banuelos and Delilah Ortiz were selling crack cocaine, heroin, and methamphetamine out of their apartment (the "Acoma apartment") in Albuquerque, New Mexico. The informant introduced Agent Bryan Shields, who was working in an undercover capacity, to Banuelos. On December 14th, Shields and Albuquerque Police Detective Gregory Cunningham, who was also working

in an undercover capacity, went to the Acoma apartment to buy crack cocaine. Both Banuelos and Ortiz were in the Acoma apartment when the agents arrived. Shields and Cunningham told Banuelos that they were drug dealers from Durango, Colorado. After the agents arrived at the Acoma apartment, they observed Banuelos selling heroin to an individual in the apartment. The agents asked Banuelos if he had any crack cocaine to sell. Banuelos had crack cocaine to sell that evening, but it was of an inferior quality. The agents declined to purchase the crack cocaine from Banuelos, fearing that if they appeared too anxious it might indicate that they were undercover agents. Instead, the agents accepted Banuelos' offer to sell them $1200 worth of heroin.

The agents decided to continue buying drugs from Banuelos without arresting him because they hoped to determine the identity of Banuelos' supplier. For his part, Banuelos continued selling drugs to the agents even after Ortiz told him that she suspected Shields was an undercover agent. Banuelos told Ortiz not to worry because the agents were the informant's friends. Shields, again posing as a drug dealer from Durango, Colorado, called Banuelos on December 19th. Shields told Banuelos that the heroin had not sold well in Colorado and again asked to purchase two ounces of crack cocaine. When Shields declined Banuelos' offer to engage in a methamphetamine transaction, Banuelos told Shields that he would call him back. After the phone call, Banuelos went to a house in southeast

Albuquerque and obtained crack cocaine.[2]  Banuelos then called Shields and told him he had two ounces of high quality crack cocaine to sell; he also told Shields to come to the Acoma apartment.  The agents obtained a search warrant and went to the Acoma apartment.  As they approached, someone yelled "five-oh," a slang term for police.  Banuelos, who was outside the Acoma apartment, took the crack cocaine from his pocket, threw it on the ground, and fled.  Officers found the two ounces of crack cocaine discarded by Banuelos on the ground outside the Acoma apartment.  Inside the Acoma apartment, officers found Ortiz and a loaded revolver.

Banuelos did not testify at trial.  Ortiz, however, did testify.  She testified that she helped Banuelos sell crack cocaine and heroin in the Acoma apartment, and that she had done so for approximately eight months.  She further testified that Banuelos obtained the drugs they sold, took the money from the drug sales, gave her money to buy groceries, and paid the apartment rent and bills.

---

[2]Although a detective with the Albuquerque Police Department followed Banuelos to the house in southeast Albuquerque, the detective was not able to determine who sold Banuelos the crack cocaine.

## III. ANALYSIS

*A.    The* Allen *Instruction*

Three hours after it began deliberations, the jury sent a note to the judge indicating that it was at an impasse as to two of the three counts.[3]  In response to the jury's note, the prosecutor requested that the district court give the jury an instruction consistent with that approved by the Supreme Court in *Allen v. United States*, 164 U.S. 492 (1896); Banuelos opposed the giving of an *Allen* instruction. The district court recalled the jury and gave them an *Allen* instruction.[4]  The jury

_____

[3]The note indicated as follows:
Your Honor, after some intensive deliberations, the jury remains solidly split on 2 out of the 3 counts.  The sides continue to be more, not less, polarized the more discussion & arguing that takes place. We feel that we are at an irrevocable impasse on these two counts.

[4]The oral instruction was as follows:
        Members of the jury, I've reviewed the note I received from the foreman.  I'm going to ask that you continue your deliberations in an effort to agree upon a verdict and dispose of this case, and I have a few additional comments that I would like for you to consider as you do so:
        This is an important case.  The trial has been expensive in time, effort, and money to both the defense and prosecution.  If you should fail to agree on a verdict, the case is left open and may be tried again on those counts on which you do not agree.  Obviously, another trial would only serve to increase the cost to both sides, and there's no reason to believe that the case can be tried again by either side better or more exhaustively than it has been tried before you.
        Any further jury must be selected in the same manner from the same source as you were chosen, and there's no reason to believe that the case could ever be submitted to 12 men and women more conscientious, more impartial, and more competent to decide it, or

(continued...)

-5-

then resumed deliberations; approximately two hours and twenty minutes later, the jury returned a verdict finding Banuelos guilty on all three counts set out in the indictment.

On appeal, Banuelos argues that the *Allen* instruction given by the district court was impermissibly coercive, both because of its content and its timing. This court examines *Allen* instructions on a case-by-case basis to determine whether any given instruction is impermissibly coercive. *United States v. Alcorn*, 329 F.3d 759, 765 (10th Cir. 2003). Some of the factors this court considers in making this determination include: "(1) the language of the instruction, (2)

---

[4](...continued)
that more or clearer evidence could be produced.

If a substantial majority of your number are for a conviction, each dissenting juror ought to consider whether a doubt in his or her mind is a reasonable one since it appears to make no effective impression upon the minds of the others. On the other hand, if a majority or even lessor number of you are for acquittal, the other jurors ought to ask themselves again and most thoughtfully whether they do not have a reason to doubt the correctness of a judgment which is not shared by several of their fellow jurors and whether they should distrust the weight and sufficiency of the evidence which fails to convince several other jurors beyond a reasonable doubt.

Remember at all times that no juror is expected to yield a conscientious conviction he or she may have as to the weight or effect of evidence. But, remember also that, after full deliberation and consideration of the evidence in this case, it is your duty to agree upon a verdict if you can do so without surrendering your conscientious conviction. You must also remember that, if the evidence in the case fails to establish guilt beyond a reasonable doubt, the accused should have your unanimous verdict of not guilty.

whether the instruction is presented with other instructions, (3) the timing of the instruction, and (4) the length of the jury's subsequent deliberations." *Id.* (quotation omitted).

Banuelos argues that the *Allen* instruction given by the district court was unduly coercive because it referred to the expense of a trial and possible retrial. This court has, however, previously approved *Allen* instructions containing similar language. *See, e.g., United States v. Reed*, 61 F.3d 803, 805 & n.5 (10th Cir. 1995); *United States v. Rodriguez-Mejia*, 20 F.3d 1090, 1091 (10th Cir. 1994). In fact, the *Allen* instruction at issue here is in every material way identical to the instruction given in *Reed*. In *Reed*, this court described this particular version of an *Allen* instruction as follows: "The *Allen* charge eventually given was evenhanded; it did not presume that the majority favored a guilty verdict; and it emphasized that no juror was expected to yield a conscientious conviction on the evidence." *Reed*, 61 F.3d at 805. If anything, the *Allen* instruction given in this case was weighted against the prosecution. The district court urged the jurors who had favored acquittal to reconsider their views only if a "substantial majority" favored conviction. On the other hand, it asked those jurors who favored conviction to reconsider their views if a "majority or lessor number" were for acquittal. Thus, in essence, the district court asked the jurors who were for acquittal to reconsider only if there were a substantial majority for

conviction, but asked all jurors who were for conviction to reconsider. Furthermore, the instruction twice stated that no juror was expected to yield a conscientious conviction and specifically reminded the jury that "if the evidence in the case fails to establish guilt beyond a reasonable doubt, the accused should have your unanimous verdict of not guilty." In these circumstances, this court has no difficulty concluding that the wording of the *Allen* instruction given by the district court was not impermissibly coercive. *See Reed*, 61 F.3d at 805; *Rodriguez-Mejia*, 20 F.3d at 1091-92; *United States v. McKinney*, 822 F.2d 946, 950-51 (10th Cir. 1987).

Banuelos argues that notwithstanding the wording of the *Allen* instruction, the jury's relatively short period of deliberation after the giving of the instruction suggests coercion. This court recognizes that "a jury returning with a verdict soon after receiving an *Allen* charge 'suggests the possibility of coercion.'" *United States v. Arney*, 248 F.3d 984, 990 (10th Cir. 2001). It must be noted, however, that there is no *per se* rule regarding the amount of time a jury takes to reach a verdict after having received an *Allen* instruction. *See, e.g., Arney*, 248 F.3d at 990 (concluding there was no coercion where verdict reached one hour after receiving instruction); *Reed*, 61 F.3d at 804-05 (same); *McKinney*, 822 F.2d at 950 (concluding there was no coercion where verdict reached on twenty-nine counts in one hour and twenty minutes after receiving instruction); *Munroe v.*

*United States*, 424 F.2d 243, 246-47 (10th Cir. 1970) (en banc) (concluding there was no coercion where verdict reached forty minutes after receiving instruction). In any event, the amount of time spent by the jury deliberating in this case after the giving of the instruction most certainly does not support an inference of coercion. In this case, the jury deliberated almost as long after receiving the instruction (two hours and twenty minutes) as it did before reaching impasse (three hours).

Finally, Banuelos agues that the giving of the *Allen* instruction in this case after the jury had begun deliberating and reached an impasse rendered the charge unduly coercive. It is certainly true that this court has repeatedly expressed a preference that *Allen* instructions be given along with all other jury instructions and before the jury has reached an impasse. *See, e.g., Arney*, 248 F.3d at 989; *United States v. Smith*, 857 F.2d 682, 684 (10th Cir. 1988); *Munroe*, 424 F.2d at 246. There is, however, no *per se* rule against the giving of an *Allen* instruction under circumstances such as in this case. *See Arney*, 248 F.3d at 989. In light of the even-handed nature of the *Allen* instruction given by the district court and the length of the jury's deliberations after the giving of the charge, this court concludes that the timing of the instruction did not render it unduly coercive. Accordingly, this court concludes that the district court did not err in giving the *Allen* instruction at issue in this case.

*B.*     *Refusal to Give an Entrapment Instruction*

Banuelos contends the district court erred in refusing to instruct the jury on the defense of entrapment. The district court denied Banuelos' request for an entrapment instruction on the ground that "there's been insufficient evidence presented for the jury to find in the defendant's favor on an entrapment theory." "[W]hether there is evidence sufficient to constitute a triable issue entrapment is a question of law" subject to *de novo* review. *United States v. Ortiz*, 804 F.2d 1161, 1164 (10th Cir. 1986).

This court has summarized the defense of entrapment and the showing a defendant must make to be entitled to such an instruction as follows:

> The entrapment defense exists to "protect an otherwise unpredisposed defendant from governmental coercion[,] . . . rais[ing] the issue of whether the criminal intent originated with the defendant or with government agents." [*Ortiz*, 804 F.2d at 1165] A defendant is "entitled to an entrapment instruction whenever there is sufficient evidence from which a reasonable jury could find entrapment." *Mathews v. United States*, 485 U.S. 58, 62, 108 S. Ct. 883, 99 L.Ed.2d 54 (1988). "For the purposes of determining the sufficiency of the evidence to raise the jury issue, the testimony most favorable to the defendant should be accepted." *United States v. Reyes*, 645 F.2d 285, 287 (5th Cir. 1981); *see also Ortiz*, 804 F.2d at 1164. The defendant must show, either by presenting his own evidence or by pointing to evidence presented by the government in its case-in-chief, his lack of predisposition to commit the crime and "government involvement and inducement." *Ortiz*, 804 F.2d. at 1164-65. [Where a defendant] did not present a defense, we must examine the government's evidence to determine whether sufficient facts existed to support an entrapment instruction.

*United States v. Scull*, 321 F.3d 1270, 1275 (10th Cir. 2003).

This court concludes that because Banuelos failed to identify evidence upon which a jury could conclude that government agents induced him to sell crack cocaine,[5] the district court did not err in refusing to instruct the jury on the question of entrapment. Before the district court, Banuelos asserted that because the government agents targeted him, an entrapment instruction is appropriate. He repeats that same assertion on appeal. *See* Appellant's Brief at 6 ("The evidence established that the government targeted Mr. Banuelos. The government approached Mr. Banuelos without invitation and encouraged him to sell crack cocaine."). As this court has made clear, however, "[e]vidence that a government agent solicited, requested or approached the defendant to engage in criminal conduct, standing alone, is insufficient to constitute inducement. Inducement also will not be shown by evidence that the government agent initiated the contact with the defendant or proposed the crime." *Ortiz*, 804 F.2d at 1165 (citation omitted). In fact, as set out above, when the agents first approached Banuelos he had crack cocaine to sell. The quality was so inferior, however, that the agents feared that their cover would be blown if they purchased the crack cocaine. Accordingly, the agents purchased $1200 worth of heroin instead. Because

---

[5]Because this court concludes that Banuelos failed to identify sufficient evidence of inducement to submit the question of entrapment to the jury, we need not consider whether Banuelos identified sufficient evidence of lack of predisposition.

Banuelos has failed to identify any "persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of reward, or pleas based on need, sympathy or friendship," he has failed to create a triable issue on the question of entrapment. *Id.*; *see also id.* ("To establish a triable issue, the defendant must point to evidence that is more than flimsy or insubstantial." (quotation omitted)).

C.      *Sentencing Enhancement for Possessing a Firearm*

U.S.S.G. § 2D1.1(b)(1) provides that if a dangerous weapon, including a firearm, was possessed in connection with a drug offense, the defendant's offense level is to be increased by two levels. "The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, cmt. n.3; *United States v. Humphrey*, 208 F.3d 1190, 1210 (10th Cir. 2000) (quoting application note). "The initial burden is on the government to prove possession of the weapon by a preponderance of the evidence, which may be satisfied by showing mere proximity to the offense." *Humphrey*, 208 F.3d at 1210 (quotation omitted). "After the government has met this burden, a defendant can still avoid the enhancement if he can prove that it is clearly improbable that the weapon was connected to the offense." *Id.*

The entirety of Banuelos' argument regarding the propriety of the § 2D1.1(b)(1) adjustment is the following: "The government failed to meet its

burden.  Furthermore, Mr. Banuelos has shown that it is clearly improbable that the weapon was connected to the offense."  Appellant's Brief at 7.  This argument is clearly insufficient.  *See* Fed. R. App. P. 28(a)(9)(A) (providing that an appellant's brief must contain "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies"); *Bailey v. Big Sky Motors, Ltd. (In re Ogden)*, 314 F.3d 1190, 1197 n.4 (10th Cir. 2002) ("[W]e are reluctant to consider arguments that do not contain legal support for their contentions.").  "Nevertheless, we proceed with the discussion of this issue only '[t]o avoid any appearance that we are sacrific[ing] substantive justice on the altar of administrative convenience.'" *Bailey*, 314 F.3d at 1197 n.4 (quoting *LINC Fin. Corp. v. Onwuteaka*, 129 F.3d 917, 922 (7th Cir. 1997)).[6]

In his objection to the Presentence Investigative Report, Banuelos simply asserted that the gun found in the Acoma apartment was not his and that there was no evidence that he had ever used or handled the gun.  Banuelos argued that because the government had failed to prove that he had ever "handled, brandished[,] or used" the gun, the § 2D1.1(b)(1) adjustment was not proper.

---

[6]Although this court will proceed to the merits of this issue, we specifically admonish counsel for his failure to comply with Fed. R. App. P. 28(a)(9)(A).

In response, the government noted that Banuelos' objection was based on a misunderstanding of § 2D1.1(b)(1). Contrary to Banuelos' assertions, the government noted that it was not required to prove that Banuelos "handled, brandished[,] or used" the gun. Instead, it merely needed to demonstrate Banuelos possessed the weapon, which it could do by showing mere proximity of the gun to the drug offenses. *Humphrey*, 208 F.3d at 1210. With regard to the question of possession, the government noted the statement of a confidential source on December 11, 2001. During a debriefing with police officers, the confidential source indicated that Banuelos had a gun in the Acoma apartment, that the gun was kept in a soft case on a chair, that he had seen the gun on numerous occasions, and that the gun was easily accessible. When agents eventually executed a search warrant on the Acoma apartment, they found a firearm in a soft case on a chair located in the living room. Because Banuelos had not adduced any evidence demonstrating that it was clearly improbable the firearm was connected to the offenses of conviction, the government asserted the § 2D1.1(b)(1) adjustment was proper.

After a hearing on Banuelos' objection, the district court agreed with the government and concluded that the § 2D1.1(b)(1) adjustment was proper. According to the district court,

> The search warrant that was executed establishes that the agents found a loaded .357 Magnum revolver in a chair located in the

living room. The revolver was in a soft gun case, which is what the confidential source had identified. And then, of course, there was cocaine inside the apartment, and the jury convicted Mr. Banuelos with possession of the cocaine and intent to distribute it.

Under [Tenth Circuit precedent], the United States has met its burden in terms of the spatial and proximity requirements; therefore, I agree with Probation and the United States that the two-level enhancement for possession of a weapon under Sentencing Guideline 2D1.1(b)(1) is appropriate. . . .

On appeal, this court reviews "the district court's interpretation of § 2D1.1(b)(1) de novo and [its] underlying factual findings for clear error." *United States v. Dickerson*, 195 F.3d 1183, 1188 (10th Cir. 1999). It is absolutely clear that the district court employed the correct legal standard in analyzing whether Banuelos was subject to the two-level adjustment set out in § 2D1.1(b)(1). Furthermore, the district court's factual findings are well-supported in the record and, therefore, are not clearly erroneous. As noted by the district court, the government carried its initial burden of demonstrating Banuelos possessed the firearm by demonstrating that Banuelos controlled the Acoma apartment and by showing the proximity of the weapon to the offenses of conviction. The burden thus shifted to Banuelos to demonstrate that the firearm was not connected to the drug trafficking activities. Because he utterly failed to carry that burden, this court concludes that the district court properly applied the two-level adjustment set out in § 2D1.1(b)(1).

*D.     Sentencing Enhancement for Acting as an Organizer, Leader, Manager or Supervisor*

U.S.S.G. § 3B1.1(c) provides that "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity [not involving more than five people or otherwise extensive], increase [defendant's offense level] by **2** levels." The district court increased Banuelos' offense level by two levels pursuant to § 3B1.1(c), concluding that Banuelos supervised Ortiz. On appeal, Banuelos asserts that the district court erred in applying § 3B1.1(c) because the evidence at trial demonstrated that he and Ortiz were in a romantic relationship and were equal partners in the distribution scheme.

In concluding that Banuelos was subject to the two-level upward adjustment set out in § 3B1.1(c), the district court found that Banuelos controlled the distribution of drugs. In particular, the district court found that Banuelos and Ortiz sold drugs together from the Acoma Apartment. Ortiz testified at trial that Banuelos would get the drugs "ready for me in the morning, would call my cell phone, and I would meet the customers." Banuelos obtained the drugs and kept the proceeds of the drug sales. Banuelos paid all the bills, including the rent on the Acoma apartment. Based on these facts, the district court concluded that Banuelos was a supervisor as that term is defined in *United States v. Backas*, 901 F.2d 1528 (10th Cir. 1990).

To qualify as a supervisor, "one needs merely to give some form of direction or supervision to someone subordinate in the criminal activity." *Backas*, 901 F.2d at 1530. Although this court reviews the district court's factual findings for clear error, the determination whether a defendant qualifies as a supervisor for purposes of § 3B1.1(c) is a question of law subject to *de novo* review. *United States v. Albers*, 93 F.3d 1469, 1487 (10th Cir. 1996). Upon *de novo* review, this court concludes the district court correctly determined that Banuelos was a supervisor of the drug activity for purposes of § 3B1.1(c). Banuelos obtained the drugs and directed Ortiz as to how and when the drugs would be sold. He kept all of the drug proceeds and paid for all of the expenses. Furthermore, when Ortiz expressed hesitancy regarding further drug sales to the agents, it was Banuelos who decided that the drug sales to the agents would continue. Thus, Banuelos clearly gave some form of direction to Ortiz, an individual subordinate in the criminal activity. *Backas*, 901 F.2d at 1530; *United States v. Mandilakis*, 23 F.3d 278, 280 (10th Cir 1994) (noting that in determining supervisor status, courts may consider a defendant's exercise of decision making authority, the nature of participation in the offense, the recruitment of accomplices, the claimed right to a larger share of the proceeds, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control exercised over others).

*E.      Refusal to Depart Downward*

Banuelos moved the district court to depart downward from the applicable sentencing range set out in the Sentencing Guidelines.  In particular, Banuelos argued that his criminal history category of VI, based on his status as a career offender,[7] over-represented his prior criminal conduct.  He further argued that his case fell outside the heartland of the Guidelines because the Guidelines were designed primarily to target "hardened dealers."  After cataloging Banuelos' extensive criminal history, the district court denied the downward-departure motion:

> When you look at the defendant's criminal history, I agree with the government that there are simply no factors in this case that would cause the defendant's career offender status to over-represent the seriousness of his criminal history or the likelihood of recidivism. Therefore, I find and conclude that this case is squarely within the heartland of cases and the guidelines and that a downward departure is not warranted.

---

[7]The Sentencing Guidelines provide that

A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a).  Because Banuelos satisfied each of the criteria set out in § 4B1.1(a), his criminal history category was set at VI.  *Id.* § 4B1.1(b) ("A career offender's criminal history category in every case under this subsection shall be Category VI.").

Banuelos recognizes that "[c]ourts of appeal cannot exercise jurisdiction to review a sentencing court's refusal to depart from the Guidelines, either upward or downward, unless the court refused to depart because it interpreted the Guidelines to deprive it of the authority to do so." *United States v. Fortier*, 180 F.3d 1217, 1231 (10th Cir. 1999). Nevertheless, he asserts that this court "should reconsider those precedents and find that the district court abused its discretion in failing to downwardly depart." Appellant Br. at 8. Contrary to Banuelos' invitation, it is clear that this panel cannot disregard the rule set out in *Fortier*. *See United States v. Edward J.*, 224 F.3d 1216, 1220 (10th Cir. 2000) ("Under the doctrine of stare decisis, this panel cannot overturn the decision of another panel of this court barring en banc reconsideration, a superseding contrary Supreme Court decision, or authorization of all currently active judges on the court." (quotations omitted)). The record reveals that the district court well-understood its discretionary power to depart and simply concluded no departure was warranted under the facts of this case. Thus, this court lacks jurisdiction to review the district court's refusal to depart downward. *Fortier*, 180 F.3d at 1231.

## IV. CONCLUSION

For those reasons set out above, the judgment of conviction entered and the sentence imposed by the United States District Court for the District of New Mexico are hereby **AFFIRMED**. Banuelos' appeal of the district court's refusal to depart downward from the applicable sentencing range is **DISMISSED** for lack of appellate jurisdiction.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge