**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 24 2001**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

No. 00-6187

DAVID L. ARNEY,

Defendant - Appellant.

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D. Ct. No. CR-99-104-L)**

Stephen Jones, Stephen Jones & Associates, Enid, Oklahoma, appearing for Appellant.

Joe Heaton, First Assistant United States Attorney (Daniel G. Webber, Jr., United States Attorney, with him on the brief), Office of the United States Attorney, Oklahoma City, Oklahoma, appearing for Appellee.

Before **TACHA**, Chief Judge, **BRORBY**, and **MURPHY**, Circuit Judges.

**TACHA**, Chief Judge.

Appellant was convicted in a jury trial of four counts of bank fraud. Appellant argues that the district court improperly administered an <u>Allen</u> instruction to the jury, committed reversible error in excluding the testimony of an expert witness, admitted

evidence in violation of Rule 404(b) of the Federal Rules of Evidence, and improperly

redacted a note attached to an exhibit which was admitted into evidence. We exercise

jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## I. Background

On June 15, 1999, appellant David L. Arney was indicted on four counts of bank

fraud. The indictment alleged that, during a four-year period between 1990 and 1993,

Mr. Arney submitted to two banks false federal income tax returns reflecting an inflated

income in an effort to secure lines of credit.

Mr. Arney did not deny that the tax returns submitted by him to the banks were

different from those filed with the IRS. He admitted that, at the time he submitted to the

banks the documents that appeared to be federal income tax returns, he had not filed his

tax returns. He argued, however, that his intent in delaying the filing of his tax returns

was not to defraud the banks, but to maximize his recovery from Koch Oil Company in a

previous litigation.[1] While conceding that the documents submitted to the banks appeared

---

[1]According to Mr. Arney, Koch Oil Company's pipeline broke in 1989, causing an oil spill on Mr. Arney's property. Mr. Arney and his family filed suit against Koch Oil. The parties ultimately settled in 1990. During his trial for bank fraud, Mr. Arney acknowledged that he did not timely file his 1989 and 1990 federal tax returns because he did not want to give Koch Oil access to his financial information. Koch Oil had formally requested copies of Mr. Arney's federal tax returns. Through past experience with an oil spill on his grandfather's land, he testified that he believed providing Koch Oil with his financial information would impair his chance for a substantial recovery. In his bank fraud trial, Mr. Arney testified that his decision to delay filing his tax returns was, in part, in reliance on what he perceived as advice from his legal counsel. Mr. Arney testified that he interpreted a "stick-um" from his counsel attached to the interrogatory as advice to

to be tax returns but were not, he argued that the information contained in the documents was correct in all material respects. Furthermore, he argued that his delay in filing his federal tax returns was not intended to defraud the banks, but was a strategic decision in the Koch Oil litigation. Finally, he argued that the differences between the information contained in the documents submitted to the banks and the information contained in the federal tax returns that he subsequently filed are the result of a good faith mistake.[2]

Following various pretrial proceedings, Mr. Arney was tried in October 1999. The jury in that case was unable to agree on a verdict. The district court declared a mistrial.

Mr. Arney's retrial began on December 6, 1999. The jury heard testimony from representatives of both banks and the IRS. In addition, Mr. Arney took the stand in his own defense.

The case went to the jury on December 8. After deliberating for approximately four hours, the jury sent a note stating: "Your Honor, we have been unable to reach a unanimous decision. It does not appear that this will change. What should we do now?"

delay filing his returns because he would not have to produce tax returns that he had not filed.

[2]Mr. Arney testified that he prepared the documents submitted to the banks using the modified accrual method of accounting. After receiving the financial settlement from Koch Oil, Mr. Arney was audited by the IRS. The IRS agent performing the audit insisted that Mr. Arney file his delinquent federal tax returns and that those returns be prepared using the net bank deposit method. Mr. Arney testified that the difference between these two methods explained the significant differences between the documents he provided to the banks and his filed federal tax returns. At trial, he argued that he believed in good faith that using the modified accrual method was permissible and that he believed the documents prepared using this method were correct.

The district court then gave a supplemental <u>Allen</u> instruction and directed the jury to continue deliberating.  Approximately one hour later, the jury returned its verdict finding Mr. Arney guilty on all four counts of the indictment.

On appeal, Mr. Arney argues that the district court committed reversible error in four respects: (1) in administering the <u>Allen</u> instruction because it was coercive, (2) in excluding the testimony of Mr. Arney's expert, (3) in admitting evidence presented by the government in violation of Rule 404(b) of the Federal Rules of Evidence, and (4) in redacting a note from Mr. Arney's counsel during the Koch Oil litigation attached to one of Mr. Arney's exhibits.

## II.  Discussion

## A.  The <u>Allen</u> Charge

An <u>Allen</u> charge derives its name from the supplemental jury instruction approved by the Supreme Court in <u>Allen v. United States</u>, 164 U.S. 492, 501-02 (1896).  "The purpose of such a charge is to encourage unanimity (without infringement upon the conscientious views of each individual juror) by urging each juror to review and reconsider the evidence in the light of the views expressed by other jurors, in a manner evincing a conscientious search for truth rather than a dogged determination to have one's way in the outcome of the deliberative process."  <u>United States v. Smith</u>, 857 F.2d 682, 683-84 (10th Cir. 1988).

This circuit has repeatedly urged caution in the use of <u>Allen</u> charges. <u>See, e.g.</u>, <u>United States v. Rodriguez-Mejia</u>, 20 F.3d 1090, 1091 (10th Cir. 1994); <u>United States v. Butler</u>, 904 F.2d 1482, 1488 (10th Cir. 1990). "In this circuit an <u>Allen</u> charge can be given if it is not impermissibly coercive." <u>United States v. Porter</u>, 881 F.2d 878, 888 (10th Cir. 1989). We review an <u>Allen</u> charge for coerciveness "in its context and under all the circumstances." <u>Lowenfield v. Phelps</u>, 484 U.S. 231, 237 (1988) (internal quotation marks omitted); <u>accord</u> <u>Porter</u>, 881 F.2d at 888 ("In determining whether an <u>Allen</u> instruction is permissible, the Tenth Circuit 'has made a case by case examination to determine whether the taint of coercion was present.'" (quoting <u>Munroe v. United States</u>, 424 F.2d 243, 246 (10th Cir. 1970) (en banc))). Some of the factors we consider in making this determination include: (1) the language of the instruction, (2) whether the instruction is presented with other instructions, (3) the timing of the instruction, and (4) the length of the jury's subsequent deliberations. <u>Mason v. Texaco, Inc.</u>, 948 F.2d 1546, 1557 (10th Cir. 1991) (factor 4); <u>Porter</u>, 881 F.2d at 888 (factors 1-3).

We turn first to the language of the <u>Allen</u> charge.[3] "'[T]he inquiry in each case is

_____

[3]The court instructed the jury as follows:

This is an important case. The trial has been extensive. Your failure to agree upon a verdict will necessitate another trial and require the parties once again to undergo the investment of time and effort and the stress of trial. The court is of the opinion that the case cannot be again tried better or more exhaustively than it has been on either side. It is therefore very desirable that you should agree upon a verdict.

The court does not desire that any juror should surrender his or her

-5-

whether the language used by the judge can be said to be coercive, or merely the proper exercise of his common law right and duty to guide and assist the jury toward a fair and impartial verdict.'" Porter, 881 F.2d at 889 (quoting United States v. Winn, 411 F.2d 415, 416 (10th Cir. 1969)). Although the district court emphasized that a verdict was "very desirable" and expressed an opinion that the case could not be tried better by either side, the remainder of the instruction properly and clearly emphasized that no "juror should surrender his or her conscientious convictions" and that each juror should consider his or her opinion "with a proper regard and deference to the opinion of [the others.]" Additionally, the charge given to the jury in this case was what we have referred to as a "modified" Allen charge, differing from a traditional Allen charge by asking each juror, rather than only those in the minority, to carefully reconsider the evidence. Id. at 888. By being directed at all jurors rather than only those holding the minority view, a modified

conscientious convictions. Each juror should perform his or her duty conscientiously and honestly according to the law and evidence. The verdict to which a juror agrees must, of course, be his or her own verdict, the result of his or her own convictions and not a mere acquiescence in the conclusions of his or her fellow jurors. However, in order to bring 12 minds to a unanimous result you must examine the questions submitted to you with candor and with a proper regard and deference to the opinion of each other. You should consider that the case must at some time be decided, that you are selected in the same manner and from the same source from which any future jury must be, and there is no reason to suppose that the case will ever be submitted to 12 men and women more intelligent, more impartial or more competent to decide it; or that more or clearer evidence will be produced on one side or the other. You may conduct your deliberations as you choose, but I suggest you now retire and carefully consider again the evidence in this case.

Allen charge reduces the possibility of coercion. Lowenfield, 484 U.S. at 237-38; United States v. Reed, 61 F.3d 803, 805 (10th Cir. 1995); Porter, 881 F.2d at 889. We hold that the language of the Allen charge was not coercive, but was a proper exercise of the district court's duty to guide and assist the jury.

Mr. Arney argues that giving the Allen instruction during the course of jury deliberations unduly emphasized the importance of reaching a verdict, thereby coercing the jury. "The use of a supplemental [Allen] charge has long been sanctioned." Lowenfield, 484 U.S. at 237. "This court has previously emphasized that there is no per se rule against giving an Allen charge after a jury has commenced deliberations." Porter, 881 F.2d at 889. Although this court has stated that the preferred practice is to issue an Allen charge prior to jury deliberations along with other jury instructions, id., we have found on numerous occasions that Allen charges given to a jury during its deliberations were not unduly coercive. See, e.g., Reed, 61 F.3d at 805; Butler, 904 F.2d at 1487-88; Porter, 881 F.2d at 889; United States v. McKinney, 822 F.2d 946, 950-51 (10th Cir. 1987); Munroe, 424 F.2d at 247.

In addition to looking to whether an Allen instruction was incorporated with other instructions and given prior to the commencement of jury deliberations, we also look to whether the Allen charge was given before the jury reached an impasse. Porter, 881 F.2d at 889. Mr. Arney argues that the Allen instruction was coercive because it was given after the jury had indicated that it was deadlocked and without any indication from the

jury that it could reach a verdict.  While we have noted "the inherent danger in this type of instruction when given to an apparently deadlocked jury" and have urged that, if given at all, an <u>Allen</u> charge "be incorporated in the body of the original instructions," we have given this counsel "in the form of a suggestion." <u>Munroe</u>, 424 F.2d at 246 (internal quotation marks omitted).  While the preference is that the <u>Allen</u> instruction be given prior to impasse or deadlock, <u>Smith</u>, 857 F.2d at 684, we have not adopted this as a per se rule.

Mr. Arney argues that an <u>Allen</u> instruction given to a deadlocked jury is coercive unless the jury, after receiving the <u>Allen</u> charge, indicates that they are not hopelessly deadlocked.  <u>Cf.</u> <u>Porter</u>, 881 F.2d at 889 (noting juror's indication, after receiving <u>Allen</u> instruction, that they could reach verdict indicated they were not hopelessly deadlocked and reduced possibility of coercion).  While we agree that such an indication is preferable, we have previously upheld <u>Allen</u> instructions even where the jury has indicated that it could not reach a verdict and the district court did not inquire whether the jury could overcome the impasse.  <u>See, e.g.</u>, <u>Reed</u>, 61 F.3d at 805; <u>Butler</u>, 904 F.2d at 1487-88; <u>McKinney</u>, 822 F.2d at 950; <u>see also</u> 2A Charles Alan Wright, <u>Federal Practice and Procedure</u> § 502, at 530-31 (3d ed. 2000) ("The court is not required to accept the judgment of a jury that it is hopelessly deadlocked, and may require it to continue deliberating, but may not say anything having a coercive effect on the members of the jury." (footnote omitted)).

Additionally, Mr. Arney argues that other timing factors created a coercive context for the jury deliberations. Specifically, he argues that the Allen instruction was coercive because it was given between 5:00 and 5:30 in the evening. He argues that the time, combined with the district court's question about whether any of the jurors needed to move their cars and assurance that the jurors would be accompanied to their cars once it was dark, was coercive because it implied that the jurors would not be permitted to leave until they reached a verdict. He argues further that the timing was even more coercive because the district court did not ask the jurors questions such as whether they wanted a break for dinner, or whether they needed to call home.

The district court advised the jury on the first day of trial that the jury would be excused by approximately 6:00 p.m. on the first two days of trial. We discern no reason why, on the third day of trial, the jury would find continued deliberations at 5:30 p.m. unusual or coercive. Additionally, the jury was deliberating on December 8. We take judicial notice of the fact that days are shorter and darkness comes earlier in December than in other months. Thus, the jurors would have to walk in darkness to their cars at a much earlier hour than during summer months. In context, we find that the district court's assurance that jurors would be accompanied to their cars after dark reduced the possibility of coercion, rather than increased it, by alleviating any potential concern the jurors may have felt for their safety after dark.

We next turn to the length of the jury's deliberations following the Allen charge.

-9-

We are mindful that a jury returning with a verdict soon after receiving an <u>Allen</u> charge "suggests the possibility of coercion." <u>Lowenfield</u>, 484 U.S. at 240. In this case, the jury deliberated for approximately one hour after receiving the <u>Allen</u> instruction.[4] We have approved <u>Allen</u> instructions in previous cases where the juries also deliberated for short periods of time. <u>See, e.g.</u>, <u>Reed</u>, 61 F.3d at 805 (one hour); <u>McKinney</u>, 822 F.2d at 950 (verdict on 29 counts in one hour and 20 minutes); <u>Munroe</u>, 424 F.2d at 246 (40 minutes).

Mr. Arney also argues that the jury was coerced because it was forced to take a shortened lunch period. He provides no citation to the record, however, and we have been unable to locate any reference in the record to shortened lunches. Therefore, we do not include this allegation in our analysis.

Finally, Mr. Arney argues that the <u>Allen</u> instruction was coercive because the case was being tried against the clock. The district judge informed counsel that the trial had to be concluded by 10:45 a.m. on December 9 because he had an emergency meeting out of state. It is clear from the record, however, that this deadline was not communicated to the jury. While the parties may have felt coerced, we find no indication that the jury was coerced by, or even aware of, this deadline.

---

[4]It is unclear from the record exactly how long the jury deliberated after receiving the <u>Allen</u> instruction. In his brief, Mr. Arney asserts that the jury deliberated for less than 45 minutes. Elsewhere he asserts that the <u>Allen</u> instruction was given at 5:30 or 5:15 in the evening. The record indicates that the jury returned its verdict at 6:30. In any event, we reach the same conclusion whether deliberations were 45 minutes or one hour and 15 minutes.

Considering the overall context of the <u>Allen</u> instruction given here, we find that it was not coercive in a way that undermined the integrity of the jury's deliberation. We hold that the district court did not err in submitting the <u>Allen</u> charge to the jury.

**B. Expert Witness**

Mr. Arney argues that the district court erred in excluding the testimony of his expert witness. We review the admission or exclusion of expert testimony for abuse of discretion. <u>United States v. Rice</u>, 52 F.3d 843, 847 (10th Cir. 1995). The district court "has wide discretion in making these determinations." <u>Id.</u> "[U]nder Rule 702, the inquiry of whether expert testimony will assist the trier of fact is essentially a question of relevance." <u>Id.</u>

Mr. Arney sought to admit the testimony of Nelson Bonifeld, a CPA and former IRS agent. Mr. Arney argues that the district court abused its discretion in excluding this testimony because Mr. Bonifeld's testimony would have included: (1) testimony concerning accounting methods, IRS requirements for farmers, income reporting, and the significance of undergoing an IRS audit; and (2) testimony that the banks would not have materially relied on the documents Mr. Arney submitted as tax returns. The district court excluded the testimony because it concluded that the first issue was irrelevant and that Mr. Arney had already testified at length on those subjects, and because Mr. Bonifeld was not sufficiently qualified to testify as an expert on the second issue.

With respect to the first issue, Mr. Arney had already testified to his understanding of accounting methods, tax reporting requirements, IRS requirements for farmers, and the significance of undergoing an IRS audit. The district court concluded that Mr. Bonifeld's testimony on these issues would be unnecessarily cumulative and could confuse the jury. Even assuming that Mr. Arney's intent to avoid taxes rather than defraud the banks is relevant, he had the opportunity to testify to that issue in his own behalf. Surely he is better qualified to testify regarding his own intent than is Mr. Bonifeld. We cannot conclude that the district court erred when it decided that additional testimony regarding accounting methods and IRS requirements was unnecessarily cumulative and would serve only to confuse the jury.

Furthermore, the district court concluded that testimony on these issues was of questionable relevance. The issue in this case was based on the documents Mr. Arney submitted to the banks, not his previous litigation, his audits, or his reasons for selecting one accounting method over another. Regardless of his strategy in previous litigation and his dealings with the IRS, Mr. Arney conceded that he submitted documents to the banks that he asserted were his federal tax returns when, in fact, he had not filed those returns. The district court concluded that testimony regarding accounting methods and IRS requirements was not relevant to the question of whether Mr. Arney made false representations to the banks. We agree. The government's straightforward legal theory in this case – that Mr. Arney's submission of false tax returns was a material

misrepresentation – undermined Mr. Arney's need for expert testimony on the accounting and tax issues. Cf. United States v. Vreeken, 803 F.2d 1085, 1091 (10th Cir. 1986) (excluding expert testimony on tax and banking law where government's straightforward theory undermined need for expert testimony). We find that the district court did not abuse its discretion in excluding Mr. Bonifeld's testimony on relevancy grounds.

With respect to the second issue, the district court excluded Mr. Bonifeld's testimony because it determined that his expertise did not extend to knowing the types of documents on which banks rely when extending credit. Mr. Arney argues that Mr. Bonifeld's service on the board of directors of a credit union qualifies him as an expert in this area. Mr. Bonifeld's own resume, however, describes him as a "tax consultant" and makes no reference to his being an expert in bank practices. Indeed, Mr. Arney does not cite, nor have we discovered, any evidence in the record beyond Mr. Bonifeld's service on the credit union board of directors that would qualify him as an expert in this subject. The district court may have been skeptical that Mr. Bonifeld's experience was sufficient to qualify him as an expert. The district court has wide discretion in this area. We cannot conclude that it abused its discretion in excluding Mr. Bonifeld's testimony on this issue.

### C. Rule 404(b)

Mr. Arney also appeals the admission of evidence of his cattle inventory under Rule 404(b) of the Federal Rules of Evidence. We review for abuse of discretion

evidentiary determinations under Rule 404(b). United States v. Green, 175 F.3d 822, 831 (10th Cir. 1999).

Mr. Arney argues that the evidence of his cattle inventory was improperly admitted because it is extrinsic to the crime charged. In admitting such extrinsic evidence, he argues, the district court must make a determination from the bench that the probative value of the evidence substantially outweighs the potential for undue prejudice. See, e.g., United States v. Jefferson, 925 F.2d 1242, 1258 (10th Cir. 1991). Because the district court did not make such a determination from the bench, Mr. Arney argues that it committed reversible error.

The government argues that the district court was not obligated to make the determination required by Jefferson because Rule 404(b) is inapplicable. "Rule 404(b) only applies to evidence of acts *extrinsic* to the crime charged." Green, 175 F.3d at 831 (internal quotation marks omitted) (emphasis added). "It is well settled that Rule 404(b) does not apply to other act evidence that is intrinsic to the crime charged . . . ." United States v. O'Brien, 131 F.3d 1428, 1432 (10th Cir. 1997). Evidence is direct or intrinsic to the crime charged if "both acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged." United States v. Lambert, 995 F.2d 1006, 1007 (10th Cir. 1993) (internal quotation marks omitted). The government argues that inaccuracies in Mr. Arney's cattle inventory reports are intrinsic to the charged crime of bank fraud because they are part of the same transaction on which the charges against Mr.

-14-

Arney are based. We agree.

Mr. Arney's misrepresentations to the banks were allegedly made to get loans for his cattle operations and these loans were secured by Mr. Arney's cattle. The banks suffered substantial losses because the loans were not repaid and, by 1994, Mr. Arney had fewer cattle than indicated by his inventory reports to the banks. Given the close connection between Mr. Arney's misrepresentations to acquire loans and his cattle inventory, we find that the district court did not abuse its discretion in determining that the cattle inventory reports were intrinsic to the crimes charged and that Rule 404(b) was therefore inapplicable.

### D. Exhibit Redaction

Finally, Mr. Arney appeals the district court's redaction of a handwritten note attached to an exhibit. We review decisions to exclude evidence for abuse of discretion. Pierce v. Shorty Small's of Branson, Inc., 137 F.3d 1190, 1192 (10th Cir. 1998).

Mr. Arney argues that the district court erred in redacting a handwritten "stick-um" note from his legal counsel attached to a discovery request from the Koch Oil litigation. Mr. Arney argues that this note supports his assertion that he relied on counsel when he was delinquent in filing his 1989 and 1990 federal income tax returns. This note, he argues, is essential to explain why he had not filed his tax returns and to rebut the government's Rule 404(b) evidence of the delinquent filing of the returns. We disagree.

Mr. Arney misconstrues the nature of the evidence of his delinquent filing of his federal income tax returns. These returns were not admitted as Rule 404(b) evidence. Rather, they were admitted to show that the documents provided by Mr. Arney were not his filed federal income tax returns because he had not filed his tax returns at that time. Thus, the delinquent tax returns were offered as proof of Mr. Arney's misrepresentations to the banks and, therefore, were intrinsic to the crimes charged. See Lambert, 995 F.2d at 1007. Consequently, whether Mr. Arney delayed filing his tax returns on the advise of counsel is of questionable relevance to this case. We find that the district court did not abuse its discretion in redacting this note from Mr. Arney's exhibit.

## III. Conclusion

We find that the district court did not err in submitting the Allen charge to the jury. We also find that the district court did not abuse its discretion in excluding the testimony of Mr. Arney's expert witness. Finally, we find that the district court did not abuse its discretion in admitting evidence of Mr. Arney's cattle inventory and redacting a note attached to one of Mr. Arney's exhibits. Accordingly, we AFFIRM.