FILED
United States Court of Appeals
Tenth Circuit

November 8, 2007

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

TOMMY ARROWGARP,

Defendant - Appellant.

No. 06-4149

(D. Utah)

(D.C. No. 03-CR-549-DB)

---

ORDER AND JUDGMENT[*]

---

Before **KELLY**, **ANDERSON**, and **TYMKOVICH**, Circuit Judges.

---

In a prior order, this panel has determined unanimously to grant the parties'

request for a decision on the briefs without oral argument. See Fed. R. App. P.

34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral

argument.

Following a jury trial, Tommy Arrowgarp was convicted on one count of

aggravated sexual abuse of a minor while within Indian country, in violation of 18

U.S.C. §§ 2241(c) and 1153(a); one count of sexual abuse of a minor while within

---

[*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

Indian country, in violation of 18 U.S.C. §§ 2243(a)(1) and 1153(a); and one count of assault within Indian country, in violation of 18 U.S.C. §§ 113(a)(4) and 1153(a). He was sentenced to 262 months' imprisonment, followed by sixty months of supervised release. Arrowgarp appeals his conviction and sentence, which we affirm.

## BACKGROUND

The facts underlying Arrowgarp's conviction are not in dispute and are as follows: "TA," the minor victim in this case, moved into Gloria Thompson's house when she was approximately six years old, and remained there for the next ten years. Gloria Thompson is TA's grandmother's sister and she is the mother of defendant Arrowgarp. Arrowgarp lived in Thompson's house during the same time that TA resided there.

When TA was six years old, Arrowgarp began sexually abusing her, initially by means of digital penetration. Arrowgarp began having sexual intercourse with TA when she was nine years old, and that continued on a regular basis until TA ran away when she was sixteen years old. On September 5, 2001, when TA was sixteen years old, Arrowgarp came home from work and assaulted TA and then raped her. When her bruises from that assault had healed, TA returned to school, but ran away to a friend's house after school. The friend's

mother took her to the Children's Justice Center where TA reported the abuse. This prosecution followed.[1]

Arrowgarp was first tried in May 2004 on three counts of aggravated sexual assault, in violation of 18 U.S.C. § 2241(a), and one count of sexual assault of a minor, in violation of 18 U.S.C. § 2241(c). The jury returned a verdict of not guilty on the three § 2241(a) counts, but continued to deliberate on the § 2241(c) count. The district court gave an <u>Allen</u> charge to the jury,[2] but the jury remained unable to reach a verdict on the one count. Accordingly, the district court declared a mistrial as to that count.

Ten days later, the government informed Arrowgarp that it would retry the case. The case was reassigned to a different district court judge, additional charges were added, and a second superseding indictment was filed, charging Arrowgarp with aggravated sexual abuse of a minor, in violation of 18 U.S.C. § 2241(c), sexual abuse, in violation of 18 U.S.C. § 2242(1), sexual abuse of a minor, in violation of 18 U.S.C. § 2243(a)(1), and assault, in violation of 18 U.S.C. § 113(a)(4). The government subsequently moved to dismiss the sexual abuse count.

---

[1]Arrowgarp provides no factual recitation in his briefs. He does not challenge the government's factual statement.

[2]<u>See</u> <u>Allen v. United States</u>, 164 U.S. 492 (1896).

-3-

At trial, following the presentation of evidence from both sides, the district court instructed the jury. After the district court gave the jury its instructions, the jury commenced deliberations at approximately 11 a.m. In the late afternoon, the jury sent a note to the district court judge, who then summoned Arrowgarp, his counsel and government counsel to his chambers. The district court judge informed the parties that the jury was deadlocked and the judge was inclined to give the jury an <u>Allen</u> charge. A lengthy discussion ensued. Defense counsel objected to the <u>Allen</u> charge on the ground that the jury had not been given enough time to deliberate.

The district court judge brought the jury into the courtroom, where the judge read the jury an <u>Allen</u> charge at approximately 5:00 p.m. At approximately 7:15 p.m., the jury returned a verdict of guilty on all three counts.

In preparation for sentencing, the United States Probation Office prepared a presentence report ("PSR"). Pursuant to United States Sentencing Commission, <u>Guidelines Manual</u> ("USSG") (2000) §2A3.1(b)(1), the PSR recommended a four-level increase in the base offense level because "the offense involved conduct described in 18 U.S.C. § 2241(a) or (b)." Along with other increases in the applicable base offense level, Arrowgarp's total combined adjusted offense level was thirty-nine. With a criminal history category of I, the advisory guideline sentencing range was 262 to 327 months. Arrowgarp was sentenced to 262 months, at the low end of the advisory guideline range.

Arrowgarp appeals both his conviction and sentence, arguing: (1) the <u>Allen</u> charge given to the jury was impermissibly coercive; and (2) the district court committed errors when it sentenced Arrowgarp in that it failed to assess the reasonableness of the sentence, treated the Guidelines as mandatory and/or applied a presumption of reasonableness to the Guidelines sentence and impermissibly used judge-found facts relating to conduct of which Arrowgarp was acquitted to increase his base offense level by four levels.[3]

**DISCUSSION**

## I. <u>Allen</u> charges

"An <u>Allen</u> charge is 'a supplemental instruction given to the jury and designed to encourage a divided jury to agree on a verdict.'" <u>United States v. LaVallee</u>, 439 F.3d 670, 689 (10th Cir. 2006) (quoting <u>United States v. Zabriskie</u>, 415 F.3d 1139, 1147 (10th Cir. 2005)). "When an <u>Allen</u> charge imposes such pressure on the jury such that the accuracy and integrity of their verdict becomes uncertain, it violates a defendant's right to due process and Sixth Amendment

_____

[3]Arrowgarp also initially argued that there was no transcript of the <u>Allen</u> charge which was read to the jury after it announced a deadlock. He claimed this violated the Court Reporters Act, 28 U.S.C. § 753, and prejudiced him, necessitating a new trial. Subsequent to the filing of his opening brief in this case, Arrowgarp discovered that the <u>Allen</u> charge had, in fact, been transcribed. He is now in receipt of a copy, and the record in this case has been supplemented to include a copy. Arrowgarp thus concedes that the Court Reporters Act has been satisfied, and he has no argument based upon any claimed failure to have the <u>Allen</u> charge transcribed.

rights to an impartial jury trial and to a unanimous verdict." Id. (further quotation omitted).

"We review whether an Allen instruction was erroneously given on a case-by-case basis with a view towards determining whether the instruction had a coercive effect on the jury." United States v. Alcorn, 329 F.3d 759, 765 (10th Cir. 2003) (further quotation omitted). "We . . . review for abuse of discretion, considering whether the supplemental instruction coerced a verdict." United States v. Patterson, 472 F.3d 767, 780 (10th Cir. 2006). However, in this case, as Arrowgarp concedes, he did not object to the giving of the Allen charge on the ground that it was coercive. Rather, he objected on the ground that the jury had not been given sufficient time to deliberate. Accordingly, we review the giving of the charge for plain error. See United States v. Olano, 507 U.S. 725, 732 (1993). To establish plain error, Arrowgarp "must show: (1) an error, (2) that is plain, which means clear or obvious under current law, and (3) that affect[s] substantial rights, and we will not reverse unless the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." Patterson, 472 F.3d at 778 (10th Cir. 2006) (further quotation omitted).

Among the factors we consider to determine whether the instruction was coercive include: "(1) the language of the instruction, (2) whether the instruction is presented with other instructions, (3) the timing of the instruction, and (4) the length of the jury's subsequent deliberations." Alcorn, 329 F.3d at 765.

Arrowgarp alleges the district court in this case gave two <u>Allen</u> charges, one during the regular jury instructions given to the jury, and the other following the jury's report that it was deadlocked on the one count. The first instruction, given to the jury just prior to its deliberations, stated as follows:

> The verdict must represent the considered judgment of each juror. In order to return a verdict it is necessary that each juror agree to the verdict. Your verdict must be unanimous. It is your duty as jurors to consult with one another, and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence in the case with your fellow jurors. In the course of your deliberations do not hesitate to reexamine your own views and change your opinion if convinced it is erroneous, but do not surrender your honest conviction as to the weight or effect of the evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.
>        Remember at all times, you are not partisans. You are judges— judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

Jury Instr. #30, R. Vol. I; Tr. of Jury Trial at 267-68, R. Vol. V at 38-39. After giving the jury additional procedural directives, the district court made the following statement, which, as we discuss below, the defendant questions on appeal:

> Now we're on your schedule. I'm guessing that Mr. Black or the court security officer has told you about eating. You can't eat until you get a verdict. Just kidding. That is sort of a new rule I just made up. No. Of course you can eat. It is 11:00. The only thing you need to be aware of is if you choose to eat while you're deliberating, you need to eat as a group. You can eat outside the building, and you'll be escorted to a restaurant, but you are not permitted to deliberate outside of the courthouse.

Id. at 270, R. Vol. V at 41.

The second Allen charge stated as follows:

In a large proportion of the cases and perhaps strictly speaking in all cases absolute certainty cannot be attained nor can it be expected. Although the verdict to which a juror agrees must, of course, be his own verdict or her own verdict, the result of his or her own convictions, and not a mere acquiescence in the conclusion of his or her fellow jurors, yet, in order to bring 12 minds to a unanimous result you must examine the questions submitted to you with candor and with the proper regard and deference to the opinions of each other. You should consider that you are selected in the same manner and from the same source from which any future jury must be selected. There is no reason to suppose that this case will ever be submitted to 12 men and women more intelligent, more impartial or more competent to decide this case or that more or clearer evidence will be produced on one side or on the other, and with this view it is your duty to decide the case, if you can consciously do so without violence to your individual judgment.

In the event you cannot so decide, a jury has a right to fail to agree. In order to make a decision more practical, the law imposes the burden of proof on one party or the other in all cases. The high burden of proof which must be sustained by the prosecution in this case has not changed. In the present case the burden of proof is on the government to establish with respect to each count each essential element of the offense and to establish that essential element beyond a reasonable doubt. And if with respect to any element of any count you are left in reasonable doubt, the defendant is entitled to the benefit of such doubt and must be acquitted. But in conferring together you ought to pay proper respect to each other's opinions and you ought to listen with the disposition to being convinced of each other's arguments. Thus, where there is a disagreement, jurors favoring acquittal should consider whether a doubt in their own minds is a reasonable one when it makes no impression upon the minds of the others equally honest and equally intelligent who have heard the same evidence and with the same degree of attention and with an equal desire to arrive at the truth and under the sanction of the same oath.

On the other hand, jurors for conviction ought seriously to ask themselves whether they should doubt the correctness of a judgment

which is not concurred in by others with whom they are associated and distrust the weight or sufficiency of that same evidence which fails to carry a conviction in the minds of their fellow jurors.

Finally, not only should jurors in the minority reexamine their positions, but jurors in the majority should also do so to see whether they have given careful consideration and sufficient weight to the evidence which has favorably impressed the persons in disagreement with them. Incidentally, of course, you know that if you are unable to reach a unanimous verdict as to all counts, you are free to return a verdict on those counts as to which all of you do agree.

Tr. of Jury Trial at 6-8, R. Supp. Vol. IV at 6-8. As indicated, the district court gave this Allen charge at approximately 5:00 p.m. At approximately 7:15 p.m., the jury returned its guilty verdict.

The government argues that Instruction number 30, given to the jury before deliberations, was not an Allen charge, but, rather, "simply an explanation of the duty to deliberate and the unanimous requirement similar to the Tenth Circuit Model Jury Instruction[] No. 1.23 'Duty to Deliberate–Verdict Form.'" Appellee's Br. at 11 n.3. We address the validity of this instruction first.

We begin by noting that this instruction "is not a typical Allen charge. Generally, such an instruction urges deadlocked jurors to 'review and reconsider the evidence in the light of the views expressed by other jurors' so as to avoid a mistrial." LaVallee, 439 F.3d at 689 (quoting Darks v. Mullin, 327 F.3d 1001, 1013 (10th Cir. 2003)). We nonetheless determine whether the instruction was impermissibly coercive. We consider the factors listed above: "'(1) the language of the instruction, (2) whether the instruction was presented with other

instructions, (3) the timing of the instruction, and (4) the length of the jury's subsequent deliberations.'" Id. (quoting Darks, 327 F.3d at 1013).

With respect to the first factor—the instruction's language—we ask whether it was "'coercive, or merely the proper exercise of [the district court judge's] common law right and duty to guide and assist the jury toward a fair and impartial verdict.'" Id. (quoting United States v. Arney, 248 F.3d 984, 988 (10th Cir. 2001)). We find there is "nothing inherently coercive" in the language of Instruction number 30. It "did not press hold-out jurors to yield to the majority position; and it did not impose any time restrictions on the deliberations." Id. at 689-90. Rather, it simply reminded jurors of the nature of their deliberations and reminded them of the unanimity requirement.

Furthermore, it was given along with the other jury instructions,[4] prior to the jury's deliberations. See United States v. McElhiney, 275 F.3d 928, 942 (10th Cir. 2001) ("In order to temper the potential coercive effect of an Allen charge, this court has recommended that the instruction be incorporated with the other jury instructions—in other words, that it be given as part of the original jury instructions."). While Arrowgarp suggests that it was given in such a way that it

---

[4]Generally speaking, Instruction 30 was given along with the other jury instructions. The district court gave Instructions 1 through 29 to the jury prior to closing arguments. The court gave the remaining four instructions, including number 30, after the government's closing argument, because "those instructions pertain[ed] more directly to exactly" what the jury would be doing when they commenced deliberations. Tr. of Jury Trial at 241, R. Vol. V at 12.

would "stand out or receive emphasis," Appellant's Op. Br. at 3, we disagree. It was simply grouped with instructions more directly pertaining to the process of jury deliberation. Arrowgarp also argues that the coercive language of the instruction was further emphasized by the district court's joke to the jury about not being able to eat until a verdict was reached. Arrowgarp argues "the district court's comments run the risk of over emphasizing the desire for a fast verdict." Id. at 5. We again disagree. The district court judge's comment was obviously humorous, which the judge immediately pointed out to the jury. Furthermore, the judge then informed the jury as to its options for eating a meal during deliberations. In context, the judge's joke was clearly intended as such, and would in no way have been construed by the jury as directing the jury to reach a verdict quickly.

In sum, neither the language nor the context or any other aspects of Instruction number 30 compel the conclusion that it coerced the jury into reaching a guilty verdict. We turn now to the true Allen charge, given after the jury had announced it was deadlocked. We again consider the factors set forth above to assess whether the instruction was impermissibly coercive.

With respect to the first factor—the language of the instruction—we must ask "whether the language of the instruction is 'coercive, or merely the proper exercise of [the district court judge's] common law right and duty to guide and assist the jury toward a fair and impartial verdict.'" LaVallee, 439 F.3d at 689

(quoting United States v. Arney, 248 F.3d 984, 988 (10th Cir. 2001)).  The instruction, which largely tracks the Tenth Circuit Pattern Criminal Jury Instructions for a modified Allen instruction, contained the "recommended cautionary language" we have approved in other cases.  McElhiney, 275 F.3d at 938.  Thus, the instruction urged that "no juror should yield his or her conscientiously held convictions simply to reach an agreement" and it reminded jurors "that the burden of proof belonged to the government, not the defendant." Id.; see also United States v. Arney, 248 F.3d 984, 988 (10th Cir. 2001).  Further, the instruction contained none of the embellishments we have found troublesome in prior Allen instructions.  See McElhiney, 275 F.3d at 945 (finding problematic embellishments where "the district court repeatedly emphasized the desirability of a verdict and the court's desire to have a verdict reached" and the district court remarked about the "expense and danger" of the trial).

Arrowgarp also argues that the timing of the instruction (it was given at 5:00 p.m., after the jury had announced it had deadlocked, with no indication of when the jurors would be sent home) rendered the instruction coercive.  We again disagree.  "While the preference is that the Allen instruction be given prior to impasse or deadlock, we have not adopted this as a per se rule."  Arney, 248 F.3d at 989.  Further, we have approved Allen charges given in the later afternoon. See id. (finding no coercion in Allen charge given between 5:00 and 5:30 p.m.).

We also find nothing coercive in the length of time the jury deliberated following its receipt of the <u>Allen</u> charge. We have upheld the validity of <u>Allen</u> charges where the jury deliberated for a shorter period of time following the giving of the charge than the two hours in this case. <u>See id.</u> at 990 (finding no coerciveness when the jury deliberated "one hour after receiving the <u>Allen</u> instruction"); <u>see also</u> <u>Gilbert v. Mullin</u>, 302 F.3d 1166, 1175 (ninety minutes); <u>United States v. Reed</u>, 61 F.3d 803, 805 (10th Cir. 1995) (one hour); <u>United States v. McKinney</u>, 822 F.2d 946, 950 (10th Cir. 1987) (returning verdict on twenty-nine counts after one hour and twenty minutes). We have noted that "[o]ther courts . . . generally afford trial judges wide latitude in determining the length of time that the jury will be allowed to deliberate on a given day." <u>Weaver v. Blake</u>, 454 F.3d 1087, 1099 (10th Cir. 2006).[5]

In short, we find nothing coercive in the district court's <u>Allen</u> instruction given to the jury following its announcement that it had deadlocked. Neither the language of the instruction nor the circumstances surrounding its delivery to the jury suggests that the jury was coerced into reaching its guilty verdict. We

---

[5]In addition to the four factors we have applied to assess the coerciveness of an <u>Allen</u> charge, we have recognized that other miscellaneous factors may have a bearing on whether the charge was coercive. In <u>McElhiney</u>, we noted that "[t]he fact that the jury in [defendant's] first trial could not reach a verdict contributes to the coercion calculus." <u>McElhiney</u>, 275 F.3d at 948. While Arrowgarp's first trial did indeed end in a hung jury, that factor does not outweigh the other factors suggesting that the jury in his second trial was not coerced.

-13-

accordingly discern no error, let alone a plain error, in the district court's

instructions in this case.

## II.  Reasonableness of sentence

Arrowgarp was sentenced to 262 months' imprisonment, which was at the

low end of the advisory Guideline sentence.  As indicated, the PSR recommended

that Arrowgarp's base offense level be increased by four levels pursuant to USSG

§2A3.1(b)(1) because the offense involved conduct described in 18 U.S.C.

§ 2241(a) or (b) (aggravated sexual abuse).[6]  At sentencing, Arrowgarp argued

that it was improper to use conduct meeting the standard of § 2241(a), since

Arrowgarp had previously been acquitted of violating § 2241(a).  He argued

"[u]nder Blakely and Booker, . . . it is not appropriate to enhance a sentence

without it being information going to a jury and the jury making a finding."  Tr.

of Sentencing at 5, R. Vol. VI at 5.  The district court rejected this argument and

found "by a preponderance of the evidence, and based on what . . . is an

appropriate concession by [defense counsel] that . . . force was used."  Id. at 14,

R. Vol. VI at 14.  With a combined adjusted offense level of thirty-nine, which

included the four-level enhancement for § 2241(a) conduct, and a criminal history

---

[6]18 U.S.C. § 2241(a), prohibiting aggravated sexual abuse, makes it a crime
to "knowingly cause[] another person to engage in a sexual act . . . by using force
against that other person."  The PSR reported that the "victim stated the defendant
frequently used force against her as he molested her beginning at age 6 and
continuing through age 12."  PSR at ¶ 37, R. Vol. VII.

category of I, the PSR calculated an advisory Guideline sentencing range of 262 to 327 months.

The government argued for a sentence at the high end of the sentencing range. Arrowgarp argued for something lower than the advisory Guideline range, based in part on the claimed error in the four-level enhancement and based, as well, on an argument that the 3553(a)(2) factor of just punishment and deterrence would not be served by a 262-month or higher sentence because "[s]ince 2001 Tommy [Arrowgarp] hasn't committed any other crimes." Tr. of Sentencing at 25, R. Vol. VI at 25. The district court elected to sentence Arrowgarp to 262 months, the low end of the advisory Guideline range. The district court stated:

> I consulted the guidelines to reach this sentence. I appreciate [government counsel's] request for the high end. I think sometimes we get into the guidelines and think they are more magical than they are. I tend to step back on one like this and see the high end as being life, frankly. If I had an indication that the defendant had psychosexual tendencies towards pedophilia, or if I had a medical indication of that, or if I had any indication involving this defendant's sexual abuse of other women, and the only thing that indicated that by the government is the contact with other women while the defendant was with the victim in this case. That does not rise to the level of my having serious questions about Mr. Arrowgarp in terms of being a predator on underaged girls.
>      This still can possibly be discussed as a crime, a very, very bad crime, and I don't have any question that it occurred, but it was a crime of opportunity and it was a crime that occurred in the house that he was living in and he took advantage of the situation time and time again. That deserves a 22 year prison sentence. That is a harsh sentence. If we go to the top end of the guidelines and add another five years, I don't think that does anyone any good. I don't think it adds deterrence to others whether it is 22 or 27. As I said, I don't have any real indication that this defendant has exhibited signs of

being a predator of women in general, let alone underaged women. If I did, I would probably not be inclined to give the 27 years. I would probably be up into an age where he would have no prospect of employing those practices on society at large. I don't have that.

I do have a lot of letters showing that the defendant, in many regards, has very positive characteristics, according to the people with whom he coexists. I want to punish by the sentence the very egregious . . . the heinous nature of the crimes.

Id. at 29-30, R. Vol. VI at 29-30.

Arrowgarp attacks his sentence, arguing: (1) the district court erred in applying the four-level enhancement on the basis of conduct for which he was previously acquitted; (2) the district court "provided no evaluation as to whether or not the Guidelines sentence was reasonable," Appellant's Op. Br. at 18; and (3) the district court erred by presuming a within-Guidelines sentence was reasonable.

"When reviewing a sentencing challenge, we evaluate sentences imposed by the district court for reasonableness." United States v. Conlan, 2007 WL 2538047, at *2 (10th Cir. Sept. 6, 2007). "Reasonableness has both procedural and substantive components." United States v. Cage, 451 F.3d 585, 591 (10th Cir. 2006). "Procedural reasonableness involves using the proper method to calculate the sentence." Conlan, 2007 WL 2538047, at *2. "Substantive reasonableness involves whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C.

-16-

§ 3553(a)." Id.; see also United States v. Kristl, 437 F.3d 1050, 1053 (10th Cir. 2006) (per curiam).

On appeal, we afford a presumption of reasonableness to a sentence that is within a properly-calculated Guidelines range. United States v. Pruitt, 2007 WL 2430125, at *3. However, as the Supreme Court recently made clear in Rita v. United States, 127 S. Ct. 2456 (2007), the presumption of reasonableness is strictly an appellate presumption. It is "error for the district court to apply the appellate presumption of reasonableness to the advisory guidelines when sentencing." Conlan, 2007 WL 2538047, at *2.

> [A] district court's job is not to impose a reasonable sentence. Rather, a district court's mandate is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of section 3553(a)(2). Reasonableness is the appellate standard of review in judging whether a district court has accomplished its task.

Id. (quoting United States v. Wilms, 495 F.3d 277, 280 (6th Cir. 2007) (quotation marks, emphasis, and citation omitted)).

With respect to procedural reasonableness, "[a] sentencing court is required, under 18 U.S.C. § 3553(c), to 'state in open court the reasons for its imposition of the particular sentence,' and this requirement is a component of procedural reasonableness under Kristl." United States v. Cereceres-Zavala, 499 F.3d 1211, 1216 (10th Cir. 2007) (quoting 18 U.S.C. § 3553(c)). However, "where 'a district court imposes a sentence falling within the range suggested by the Guidelines, Section 3553(c) requires the court to provide only a general

-17-

statement of the reasons for its imposition of the particular sentence.'" Id. at 1217 (quoting United States v. Ruiz-Rerrazas, 477 F.3d 1196, 1199 (10th Cir. 2007), petition for cert. filed (U.S. May 24, 2007) (No. 06-11540)). As the Supreme Court recently stated in Rita, "when a judge decides simply to apply the Guidelines sentence to a particular case, doing so will not necessarily require lengthy explanation." Rita, 127 S. Ct. at 2468.

Arrowgarp first challenges the calculation of his advisory Guidelines sentence by arguing that the district court erred in increasing his base offense level by four based upon its finding by a preponderance of the evidence that Arrowgarp's conduct included force, as described in 18 U.S.C. § 2241(a), even though he had been acquitted previously of violating § 2241(a). We find no error. We have held that a district court sentencing under the advisory Guidelines may rely upon facts found by the court by a preponderance of the evidence, even if the defendant has been previously acquitted by a jury:

> Applying the logic of [United States v.] Watts[, 519 U.S. 148 (1997)] to the Guidelines system as modified by Booker, we conclude that when a district court makes a determination of sentencing facts by a preponderance test under the now-advisory Guidelines, it is not bound by jury determinations reached through application of the more onerous reasonable doubt standard.

United States v. Magallanez, 408 F.3d 672, 685 (10th Cir. 2005). That is all the district court did in this case.

Arrowgarp next argues, as indicated above, that the district court provided "no evaluation" of whether the particular sentence imposed was reasonable. We have recently held that "a specific discussion of Section 3553(a) factors is not required for sentences falling within the ranges suggested by the Guidelines." United States v. Ruiz-Terrazas, 477 F.3d 1196, 1202 (10th Cir. 2007). Rather, "when the district court imposes a within-Guidelines sentence, the court must provide 'only a general statement noting the appropriate guideline range, and how it was calculated.'" Pruitt, 2007 WL 2430125, at *5 (quoting Ruiz-Terrazas, 477 F.3d at 1202 (further quotation omitted)). "If the district court did so, 'we will step in and find error when the record gives us reason to think that our ordinary (Lopez-Flores) presumption that the district court knew and applied the law is misplaced.'" Id. (quoting Ruiz-Terrazas, 477 F.3d at 1202). In this case, the district court adequately explained the basis for the within-Guidelines sentence.

Finally, we disagree with Arrowgarp's argument that the district court erroneously applied a presumption of reasonableness to the Guidelines and/or applied them in a mandatory fashion. We have carefully read the record in this case and conclude that the district court "consulted" the Guidelines, and then determined that, given the circumstances of the crimes and the defendant, a within-Guidelines sentence was appropriate. Nothing more is required.

**CONCLUSION**

For the foregoing reasons, the conviction and sentence are AFFIRMED.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge