**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 10, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JESUS ROBLES,

Defendant-Appellant.

No. 10-3119
(D.C. No. 2:09-CR-20034-KHV)
(D. of Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **O'BRIEN**, **McKAY**, and **TYMKOVICH**, Circuit Judges.[**]

---

Jesus Robles was convicted of conspiracy to possess, and possession of,

marijuana with the intent to distribute. He challenges his conviction, arguing the

district court erred by admitting testimony of prior, uncharged misconduct. Under

Federal Rule of Evidence 404(b) such evidence is admissible if it is inextricably

intertwined or intrinsic to the charged crime. Because we find the evidence was

---

[*] This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

[**] After examining the briefs and the appellate record, this three-judge
panel has determined unanimously that oral argument would not be of material
assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th
Cir. R. 34.1(G). The cause is therefore ordered submitted without oral argument.

intrinsic to the charged conspiracy and probative of Robles's involvement, we conclude the district court did not err.

Accordingly, exercising jurisdiction under 28 U.S.C. § 1291, we AFFIRM.

## I. BACKGROUND

### A. DEA Investigation and Arrest

In February 2009, a DEA agent performing hotel interdiction duties in Kansas City, Kansas, noticed a Mexican national, Taurino Cereceres-Morales, had checked into a Best Western motel. Cereceres-Morales had presented a Mexican electoral card for identification, paid with cash, and did not have a car. Suspicious of these circumstances, the agent searched law enforcement databases for his name and returned no matches. But a 2003 DEA investigation had come across a marijuana shipment addressed to "Taurino Cereceres," and, with this information, the agent began surveillance of Cereceres-Morales. Over the next several days, Robles and Juan Morales both joined Cereceres-Morales at the motel.

On February 17, 2009, the three men rented a U-Haul, drove to a Yellow Freight facility, and obtained a shipment of 40 boxes, which were labeled as containing cookies. The three drove to the home of Joel Areguin and unloaded the boxes into his garage. At this point, DEA agents approached the garage and identified themselves. After speaking with the men, the agents received written consent to search the premises from Areguin as well as Morales, who was renting

a room in Areguin's home. All four men denied ownership of the 40 boxes in the garage. The agents searched the boxes and discovered 7 boxes contained marijuana and cookies, and the remaining 33 boxes held only cookies. In total, the 7 boxes contained 221 bundles of marijuana. The four men were arrested.

The DEA agents seized documents and cell phones from the men. Cereceres-Morales had a phone number and address for Morales and a phone number for Robles. When interviewed by a DEA agent, Robles had no form of identification, and said he was staying at a residence in Kansas City but could not produce an address. He claimed he was at the residence all day the previous day. Robles, when told he had been seen at a restaurant with the other men as well as driving the U-Haul truck, stated Morales had rented the U-Haul and denied any knowledge of the marijuana. During the interview, Robles's phone received a push-to-talk call from someone identified as "Moo Moo" in the phone's contact list, which was later identified as being Jorge Cabada.

### B. Post-Arrest Investigation

In the ensuing investigation, the DEA learned Robles's flight to Kansas City was paid for by Jorge Cabada and the email associated with the flight belonged to "George Cabada," believed to be the same person. Robles had flown to Kansas City under the alias "Isaac Botello" and entered the same name in the Yellow Freight visitor's log when picking up the marijuana. Isaac Botello was a real person who lived in California and had a California driver's license. DEA

agents discovered a Missouri state identity card with the name Isaac Anthony Botello, and the same date of birth as the Isaac Botello in California, but with a picture looking like Robles. Cereceres-Morales also listed Cabada's cell phone as a local contact number when checking into the Best Western motel.

The DEA subpoenaed and analyzed the phone records for the cell phones from Robles, Cereceres-Morales, Morales, and two from Cabada, as well as phones from the Best Western motel and other phone numbers discovered in the investigation. The government analyzed phone records over the period from February 1–23, 2009 and discovered numerous contacts between the phones. Robles's phone connected twice with a Best Western phone, 35 times with Morales's phone, and 29 times with the second Cabada phone. Morales's phone connected with the first Cabada phone 25 times, a Best Western phone 44 times, and the second Cabada phone 4 times. Because Cereceres-Morales's cell phone used an international number originating in Mexico, the DEA could not obtain records for it.

Robles, along with Cereceres-Morales and Morales, was indicted and charged with conspiracy to possess with intent to distribute 100 kilograms or more of marijuana, and possession with intent to distribute the same. The conspiracy was alleged to have occurred on or about February 17, 2009.

## C. Trial

Before trial, Robles filed a motion in limine to exclude under Federal Rule of Evidence 404(b) any evidence of any prior, uncharged marijuana distribution by him. At a pre-trial hearing, the government argued it would offer evidence that was "part and parcel" of the charged conspiracy, and therefore Rule 404(b) would not apply because the evidence did not pertain to a separate, prior act. R., Vol. 2 at 394. Robles argued the information concerned events several years prior to the charged conspiracy, had no bearing on an alleged conspiracy in February 2009, and should be excluded under Rule 404(b). The district court concluded preliminarily that the evidence should not be excluded under Rule 404(b), under the assumption "the government's evidence is going to tie this all into the same conspiracy," but nevertheless kept the motion under advisement subject to trial. *Id.*

At trial, the government called Iran Rodriguez to testify about Robles's involvement in marijuana distribution with Cabada. Robles objected on the grounds the testimony was irrelevant, inadmissible, and highly prejudicial. He argued there was no evidence directly connecting Cabada to the charged conspiracy and the government was attempting to make Robles appear guilty simply through association with Cabada. The government responded that Cabada was an unindicted co-conspirator in the conspiracy at issue and that Rodriguez would testify to substantive offenses in the ongoing marijuana distribution

conspiracy. The district court overruled the objection and permitted Rodriguez to testify.

Rodriguez identified Cabada from a photograph and testified he met Cabada in 2002 and socialized with him at the time, but had no contact with him for at least the past 18 months. Rodriguez also identified Robles from a photograph. He had met Robles through Cabada, said Cabada and Robles were cousins, and felt he had a good relationship with Robles.

Rodriguez then testified about Robles and Cabada's involvement in the distribution of marijuana. Robles objected to the line of questioning, arguing it was improper Rule 404(b) evidence going to propensity. The government responded that Rodriguez's testimony related to actions that were "part and parcel of the same conspiracy," R., Vol. 2 at 1344, and stated it would connect Cabada's marijuana distribution to the time period of the charged conspiracy. The court overruled the objection.

Rodriguez testified Cabada had told him about his marijuana distribution. Rodriguez had also overheard Cabada's discussions about matters regarding marijuana, money, and deliveries. Further, Rodriguez testified that, at some point between July 2008 and February 2009, Robles stated he was involved in distributing marijuana with Cabada.

The jury convicted Robles on both counts. Morales was acquitted and Cereceres-Morales eventually pleaded guilty. Robles moved for a new trial,

-6-

arguing Rodriguez's testimony should have been excluded under either Rule 404(b) or Rule 403. The district court denied the motion. It held Rodriguez's testimony was not Rule 404(b) evidence because the evidence of Robles and Cabada's marijuana distribution between July 2008 and February 2009 was "inextricably intertwined with the conspiracy." R., Vol. 1 at 251. The court also concluded the probative value of the testimony was not substantially outweighed by any danger of unfair prejudice or misleading the jury. The court sentenced Robles to 64 months' imprisonment.

## II. DISCUSSION

On appeal, Robles challenges the district court's admission of Rodriguez's testimony. He argues the testimony was impermissible under Rule 404(b), or alternatively, should have been excluded under Rule 403. We disagree. The testimony was properly admitted as intrinsic evidence of the charged marijuana distribution conspiracy, and its probative value was not substantially outweighed by the danger of unfair prejudice or misleading the jury.

### A. Rule 404(b)

We review a district court's admission of evidence for abuse of discretion. *United States v. Mares*, 441 F.3d 1152, 1156 (10th Cir. 2006). We will not reverse a court's decision if it "falls within the bounds of permissible choice in the circumstances and is not arbitrary, capricious or whimsical." *Id.* (quotations and bracket omitted).

Rule 404(b) prohibits the admission of evidence of "*other* crimes, wrongs or acts" to prove an individual's character or propensity. FED. R. EVID. 404(b) (emphasis added). "Rule 404(b) only applies to evidence of acts extrinsic to the crime charged." *United States v. Arney*, 248 F.3d 984, 992 (10th Cir. 2001) (quoting *United States v. Green*, 175 F.3d 822, 831 (10th Cir. 1999)).[1]

"It is well settled that Rule 404(b) does not apply to other act evidence that is intrinsic to the crime charged." *United States v. O'Brien*, 131 F.3d 1428, 1432 (10th Cir. 1997). "Other act evidence is intrinsic when the evidence of the other act and the evidence of the crime charged are inextricably intertwined or both acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged." *United States v. Lambert*, 995 F.2d 1006, 1007 (10th Cir. 1993) (quotation omitted).

We have previously found acts occurring before a charged conspiracy to be intrinsic evidence because they were "inextricably intertwined" with that conspiracy. *See O'Brien*, 131 F.3d at 1432 (admitting ledger from a gambling operation that included entries outside the charged period of the conspiracy because they were intertwined with the charged criminal acts).

---

[1] "Generally speaking, intrinsic evidence is directly connected to the factual circumstances of the crime and provides contextual or background information to the jury. Extrinsic evidence, on the other hand, is extraneous and is not intimately connected or blended with the factual circumstances of the charged offense." *United States v. Parker*, 553 F.3d 1309, 1314 (10th Cir. 2009) (quotation omitted).

Here, we must determine whether Rodriguez's testimony regarding Robles and Cabada's marijuana distribution pertained to actions intrinsic to the charged marijuana conspiracy—making Rule 404(b) inapplicable—or concerned acts extrinsic to it—bringing the testimony within the scope of Rule 404(b). Robles argues the district court erroneously admitted Rodriguez's testimony. He claims his prior marijuana distribution with Cabada was extrinsic to the charged conspiracy and was subject to Rule 404(b) prohibition on the use of prior bad acts to show a defendant's character or propensity. We disagree. After a careful review of the record, we find Rodriguez's testimony was evidence of Robles and Cabada's relationship as well as their ongoing marijuana distribution and was intrinsic to the charged marijuana distribution conspiracy. Therefore, Rule 404(b) does not apply and the district court did not abuse its discretion when it admitted the testimony.

Nonetheless, Robles contends the government did not charge an ongoing conspiracy and claims his distribution of marijuana with Cabada occurred at some unspecified point prior to the charged date of the conspiracy—"on or about February 17, 2009." Rodriguez's testimony, however, was that between July 2008 and February 2009 Robles stated he was distributing marijuana with Cabada. That is, Robles was distributing marijuana in the time leading up to the charged marijuana distribution conspiracy. Although the indictment alleges the conspiracy occurred around February 17, 2009, that does not preclude the

existence of an uncharged conspiracy beginning before the charged term.

Next, Robles claims there is no link between his marijuana distribution with Cabada and the charged conspiracy. But the district court found Cabada was connected to the charged conspiracy and cited various pieces of evidence supporting this finding. *See* R., Vol. 1 at 250 & n.1. Robles does not show why this finding is clearly erroneous. Nor do we see any reason to question it.

Finally, Robles argues the two conspiracies are not inextricably intertwined because they are temporally removed, not part of a single criminal episode, and not preliminary to each other. As discussed, the two conspiracies involved the same people, same drugs, same offenses, and similar time periods. Thus, Robles's arguments are unpersuasive and fail to show the district court abused its discretion.

In addition, the district court clearly focused on whether Rodriguez's testimony related to the charged conspiracy. In fact, during Rodriguez's testimony the court called the government to the bench and warned that it was unclear whether his testimony related to the charged conspiracy. The court directed the government to elicit testimony from Rodriguez demonstrating it involved the same conspiracy. The government then specifically questioned Rodriguez regarding Robles's involvement with Cabada in the marijuana distribution and its approximate time frame. After eliciting this testimony, the government approached the bench to confirm with the court that it had

-10-

sufficiently tied Robles and Cabada's marijuana distribution together. The court confirmed the substance of Rodriguez's testimony with the government—that Robles had told Rodriguez he was distributing marijuana with Cabada—and overruled the objection to the testimony.

The district court admitted evidence of prior marijuana distribution by Robles and Cabada, finding they were "inextricably intertwined with the conspiracy charged in the indictment." R., Vol. 1 at 251. Because Rodriguez's testimony was intrinsic evidence of the conspiracy, Rule 404(b) did not apply.

In short, the district court's decision to admit Rodriguez's testimony was not an abuse of discretion.

**B. Rule 403**

Robles also argues the district court should have excluded Rodriguez's testimony under Rule 403. While not covered by Rule 404(b), intrinsic evidence is still subject to the requirements of Rule 403, which provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . or misleading the jury . . . ." FED. R. EVID. 403.

Rodriguez's testimony was clearly probative of Robles's relationship with Cabada and his involvement in the marijuana distribution conspiracy. While a connection to a drug distribution conspiracy is prejudicial in the wider sense, we do not find the probative value of Rodriguez's testimony was substantially

outweighed by the danger of unfair prejudice or misleading the jury. Robles argues the evidence was prejudicial, but fails to show how the evidence caused *unfair* prejudice or misled the jury. The government's case centered around the allegation that Robles was involved in a marijuana distribution conspiracy that included Cabada. Rodriguez's testimony regarding Robles's participation in marijuana distribution with Cabada is not unfairly prejudicial because it relates to the heart of the case.

The district court did not abuse its discretion when it admitted Rodriguez's testimony.[2]

### III.  CONCLUSION

For the foregoing reasons, we AFFIRM Robles's conviction.

ENTERED FOR THE COURT

Timothy M. Tymkovich
Circuit Judge

---

[2]  Because we find no error, we do not consider Robles's argument that the error was not harmless.